In the Matter of the Accounting of JOHN A. BRANN, as Executor of· ALICE V. LEAVITT, Deceased, Respondent.

BESSIE R. JOHNSTON, Appellant; COLLEGE OF ST. FRANCIS XAVIER et al., Respondents.

Will — ademption — rule for construction of provisions for specific legacies — gift of a designated number of shares of stock as trust fund to pay annual income to beneficiary thereof — when shares of subsidiary corporations issued to testatrix as dividend upon her original stock pass to her residuary estate and not to remaindermen under trust.

1. A specific legacy will be construed in the light of the situation existing when it was made, but unless the subject of such a legacy exists, unchanged in substance, at the date of the will, there results an ademption, complete or partial according to the facts.

2. The will of testatrix created a trust for the annual payment of a legacy to her brother with remainder to charities. The subject of the trust is described by the testatrix as "the 30 shares of stock of the Standard Oil Co. owned by me." These shares then constituted the bulk of her estate. All the rest, residue and remainder of the estate, other than a small specific legacy, "including any legacy which may lapse or be void," she gave to a residuary legatee. After the death of her brother the Standard Oil Company, under the

compulsion of a decree by the United States Supreme Court, distributed among the stockholders the shares which it held in a large number of subsidiary companies. At that time the testatrix still owned her thirty shares, and continued to own them till her death, but by force of the distribution under the decree, there came to her, in addition, shares in thirty-nine subsidiary companies, which at this time are worth more than the shares in the parent company. After this distribution the testatrix made a codicil by which she gave some small legacies which must fail unless paid out of the shares of the subsidiary companies. "In all other respects," she said, "I do hereby ratify and confirm my said will." Three months later she died. *Held*, that the shares in the thirty-nine subsidiary companies do not pass as part of the original shares, but stand separate and by themselves, and pass to the residuary legatee subject to the payment of general legacies.

*Matter of Brann*, 171 App. Div. 800, reversed.

(Argued October 4, 1916; decided November 21, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 3, 1916, which affirmed a decree of the New York County Surrogate's Court settling the accounts of the executor of Alice V. Leavitt, deceased, and directing distribution of her estate.

The facts, so far as material, are stated in the opinion.

*George H. Richards* and *Albert De Silver* for appellant. Unquestionably the distribution in December, 1911, was an extraordinary dividend and was not a distribution of capital. (*People ex rel. McClure Publications* v. *Purdy*, 161 App. Div. 541.) The extraordinary cash dividend having been declared after the death of the testatrix goes to the specific legatees of the stock, but the extraordinary property dividend (the subsidiary stocks) having been received by the testatrix in her lifetime and remaining on hand at her death, is a part of her residuary estate. (*Norris* v. *Harrison*, 2 Madd. 268; *Lock* v. *Venables*, 27 Beav. 598; *Brundage* v. *Brundage*, 60 N. Y. 544.) Much weight must be given to the fact that the will contained a residuary clause. (*Matter of*

*Reynolds,* 124 N. Y. 388.) The codicil republishes the will as of the date of the codicil. (*Matter of Campbell,* 170 N. Y. 84; *Matter of Van Doren,* 77 Misc. Rep. 44; *Brown* v. *Clarke,* 77 N. Y. 369; *Caulfield* v. *Sullivan,* 85 N. Y. 153.)

*Joseph Fennelly* and *Otto Henschel* for executor, respondent. The bequest of the thirty shares of Standard Oil Company stock is a specific legacy. (*Matter of Hastings,* 15 N. Y. S. R. 420; *Rogers* v. *Rogers,* 153 N. Y. 343; *Matter of Delaney,* 133 App. Div. 409; 196 N. Y. 530.) The bequest of the thirty shares of Standard Oil Company stock carries with it all the stock that was thereafter distributed under the decree of the United States Supreme Court dissolving the Standard Oil Company. (*Van Veghten* v. *Van Veghten,* 8 Paige, 104; *Garrett* v. *Garrett,* 2 Strobh. Eq. 272; *Standard Oil Co.* v. *United States,* 221 U. S. 1; *Williams* v. *W. U. Tel. Co.,* 93 N. Y. 162; *Burden* v. *Burden,* 159 N. Y. 287; *Beveridge* v. *N. Y. El. R. R. Co.,* 112 N. Y. 1; *Matter of Megrue,* 170 App. Div. 653; *Matter of Leeming,* 81 L. J. Ch. 453; *Blair* v. *Scribner,* 57 Atl. Rep. 328.) A specific bequest is not always confined to the very words used by a testator; the intention of the testator controls. (*Matter of Moran,* 53 Misc. Rep. 169; *Oaks* v. *Marsh,* 69 N. W. Rep. 251; 11 Mich. 168; *Ametrano* v. *Downs,* 170 N. Y. 388.)

*Joseph H. Fargis* and *William C. Orr* for College of St. Francis Xavier et al., respondents.

CARDOZO, J. The determination of this appeal requires us to construe the will and codicil of Alice V. Leavitt. The will was made in 1908. It gave to a friend, Mrs. Roy Johnston, a legacy of jewelry. It then created a trust for the annual payment of $600 to a brother for life, with remainder to charities. The subject of this trust is described by the testatrix as "the 30 shares of stock of

the Standard Oil Co. owned by me." These shares then constituted the bulk of her estate. All the rest, residue and remainder of the estate "including any legacy which may lapse or be void," she gave to her friend, Mrs. Johnston.

The brother died in April, 1911. In December of the same year, the Standard Oil Company of New Jersey distributed among its stockholders the shares which it held in a large number of subsidiary oil companies. It did this under the compulsion of a decree of the United States Supreme Court by which it was required to dispose of its holdings in corporations under its control. The decree did not compel it to distribute the holdings among its own stockholders. It might have sold the shares and distributed the money, or even kept the money in its treasury. It elected, however, to distribute the shares in kind. At that time, the testatrix still owned her thirty shares. She continued to own them till her death. But by force of the distribution under the decree, there came to her, in addition, shares in thirty-nine subsidiary companies, which to-day are worth more than the shares in the parent company. There came to her also at the same time some warrants for subscription rights.

Nine months after this distribution, in September, 1912, the testatrix made a codicil. Her brother was then dead; the shares of the subsidiary companies were already in her hands; and what she did and omitted to do must be viewed in the light of those conditions. By the codicil she gave money legacies aggregating $1,700 to friends and charities. She also disposed of a picture. "In all other respects," she said, "I do hereby ratify and confirm my said will." Three months later she died.

The question is whether the shares in the thirty-nine subsidiary companies pass as part of the original shares, or stand separate and by themselves, and pass to the residuary legatee. We think, in accord with the justices who dissented at the Appellate Division, that the residu-

ary legatee must be held to have the better right. It is true that the gift of the thirty shares is a specific legacy, and that a specific legacy will be construed in the light of the situation existing when it was made (*Matter of Delaney*, 133 App. Div. 409; 196 N. Y. 530). But it is also true that unless the subject of a specific legacy exists, unchanged in substance, at the date of the will, there results an ademption, complete or partial according to the facts. In strictness, there has been in this case no ademption at all, for the thirty shares, which were the subject of the legacy, exist; but since the subsidiary shares, while held by the parent company, helped to give the primary shares their value, the analogy of ademption becomes useful. *Slater* v. *Slater* (L. R. [1 Ch. 1907] 665) states the controlling principle, and applies it to a situation similar to the one at hand. The principle is that a change in the nature of the property works an ademption unless it is a change "in name or form only" (*Slater* v. *Slater, supra*, at pp. 671, 672, quoting *Oakes* v. *Oakes*, 9 Hare, 666, 672. See also *Norris* v. *Harrison*, 2 Maddocks, 268). It may be that where the change is merely formal, as where a company is reorganized and there is a reissue of the shares, the identity of the gift will be held to be substantially preserved (*Mallam* v. *McFie*, L. R. [1 Ch. 1912] 29; *Turner* v. *Leeming*, L. R. [1 Ch. 1912] 828), but that is not this case. Here the original shares remain intact, and there is no contest about them. The new shares are, in effect, an extraordinary dividend declared during the life of the testatrix (*Brundage* v. *Brundage*, 60 N. Y. 544; *Equitable Life Assurance Society* v. *Union Pacific R. R. Co.*, 212 N. Y. 360). The case stands the same as if the Standard Oil Company had sold the shares, and distributed the proceeds. It is hardly denied that a voluntary dividend, whether paid in money or in stock, would be separate from the primary shares. The argument is that a different rule is applicable here because the dividend was compulsory. But the suggested

distinction is inadequate. It was once thought that ademption was dependent on intention, and "it was, therefore, held in old days that when a change was effected by public authority, or without the will of the testator, ademption did not follow. But for many years, that has ceased to be law" (*Slater* v. *Slater, supra,* at p. 671). It has ceased to be law in England (Jarman, p. 163; *Slater* v. *Slater, supra*). It has ceased to be law in New York (*Ametrano* v. *Downs,* 170 N. Y. 388). What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change. We cannot find substantial identity between this extraordinary dividend and the shares from which they came.

That conclusion, if it could otherwise be thought doubtful, is made certain by the codicil. The effect of a codicil is to republish the will and make it speak again from the new date (*Matter of Campbell,* 170 N.Y. 84, 87). At the date of this codicil, the testatrix had received the subsidiary shares. She made no change, however, in the gift of her residuary estate. She made no change in her description of the trust. The trust was still to be the thirty shares and nothing else. Knowing the form of her investments, she reaffirmed her purpose. Then, if not before, the gift ceased to be indefinite.

We have spoken of the changes which the codicil failed to make. The changes that it did make, point in the same direction. It added money legacies of $1,700. If the subsidiary shares pass with the primary shares, these legacies must fail, because there is then nothing out of which to pay them. The argument is made that the testatrix expected them to be paid out of the subscription warrants, which came to her with the subsidiary shares at the time of distribution. It happens that the shares received under these warrants are worth about $2,000. In the mind of the testatrix, the subsidiary shares, it is said, were part of the thirty shares, but the

subscription warrants and the shares acquired thereunder, though fruits of the same distribution, were not part of the thirty shares. There is nothing to suggest a belief that she drew these nice distinctions. Only by the merest guesswork can we read that meaning into the will.

The value of the subsidiary shares is made the basis of another and more forceful argument. Their value, it is said, is so great that the testatrix cannot have expected them to pass under a residuary clause which, at the time of the will, carried nothing of substantial value. But the argument, though plausible, is, we think, unsound. The thirty shares remain of large value. They were worth $625 a share ($18,750 in all) before the extraordinary dividend. They were worth $420 a share ($12,600 in all) at the death of the testatrix. It is true that the subsidiary shares are now worth about $20,000, but it does not appear that they were known to have such value at the time of distribution. But if their value had been known, the result would be the same. Between the date of the will and the date of the extraordinary dividend, the brother of the testatrix, the life beneficiary of the trust, had died. It may well be that after his death, she felt that the primary thirty shares would be sufficient for the charities. She had said what should happen to any residue of her estate, and she must have felt secure in the belief that the direction would be looked upon as something more than an idle form. We cannot know what effect her brother's death and other new conditions may have had upon her mind. It is a fallacious argument which would have us say that because there was no residue when the will was made, we must construe it in such a way as to make it impossible that there should ever be a residue. It was to provide against the contingency of a possible residue that the residuary clause was framed. The opportunity to change it was given when a codicil was signed; and with knowledge of the condition of the estate, the clause was left the same. Our duty is to give

effect to it according to its terms.   We are not to cut it
down because of suspicions, impossible to verify, that the
testatrix may have failed to appreciate its scope.   To do
that is to break down the safeguards which the law throws
around a will.

The order should be reversed, with costs to the appel-
lant in all courts, payable out of the estate, and the case
remitted to the surrogate for further proceedings in
accordance with this opinion.

HISCOCK, CHASE, CUDDEBACK, HOGAN and POUND, JJ.,
concur; WILLARD BARTLETT, Ch. J., absent.

Order reversed, etc.