In the Matter of the Accounting of William R. Fitch et al., as Administrators with the Will Annexed of Charles C. Fitch, Deceased, Respondents.  Richard M. Halsey, as Executor of Flora H. Fitch, Deceased, et al., Appellants; Groton and Lansing Congregational Church et al., Respondents.

Third Department, December 30, 1952.

Arthur L. Mepham for Richard M. Halsey, as executor of Flora H. Fitch, deceased, appellant.

Arthur L. Mepham and William R. Fitch, in person, for William R. Fitch and others, appellants.

Theodore Fenstermacher for Groton and Lansing Congregational Church and others, respondents.

Harry S. Hamilton for Belle B. Ross, respondent.

Arthur L. Mepham and Richard M. Halsey for William R. Fitch and another, as administrators with the will annexed of Charles C. Fitch, deceased, respondents.

Per Curiam. The testator, Charles C. Fitch, drafted a will in his own handwriting and executed it August 26, 1930. He then owned 115 shares of the common stock and 160 shares of the preferred stock of United States Steel Corporation. He died October 6, 1949.

Before he died he had disposed of all these shares of stock. Also before he died, and after the disposition of testator's shares, the United States Steel Corporation had increased the number of shares of common stock and had issued to common stockholders three shares of new common stock in exchange for each share of old common stock held.

The will gave United States Steel common stock to various legatees and preferred stock to a church. The manner of bequest used by testator was to state the number of shares given. Then, in each instance, the language of description following the number was: " shares U. S. Steel Co. common stock ". In the case of the preferred shares, the expression " one hundred shares U. S. Steel Co. Preferred Stock " was used.

The Surrogate ruled that the stock bequests " are construed to be general legacies " and that the sale of the stock by testator during his lifetime did not adeem these legacies. We reach the same conclusion.

Where the language used in the will does not show an intent to give a particular thing to the beneficiary, distinguished and set apart from the rest of testator's property, the legacy will

be construed as general. This rule was laid down in an early, and leading decision in *Tifft* v. *Porter* (8 N. Y. 516 [1853]) which has been very consistently followed.

The case involved bequests of bank stock and it was held they were general legacies. Judge JOHNSON who wrote for the majority noted " the inclination of the courts " to hold legacies to be general rather than specific (p. 521).

Where the stock involved is traded generally on exchanges, and is not stock of a closely held corporation, it is to be treated as any other commodity available to the executor to effect the intention of the testator, and the treatment of such stock has been quite consistent. A precise and careful statement of the rule was given by DELEHANTY, S., in *Matter of Eastman* (171 Misc. 902) which dealt with Standard Oil of New Jersey and Standard Oil of California stock. (See, also, *Matter of Liell,* 139 Misc. 513.)

In *Matter of Lendle* (250 N. Y. 502) it was held that a bequest of German marks was in effect a bequest of a commodity and could be satisfied in kind. (See, also, *Matter of Morphy,* 70 N. Y. S. 2d 167.) Therefore, the conclusion of the Surrogate that the legacies were not bequests of the specific stock testator had in hand when he drew his will seems to us to be well founded.

The Surrogate has also directed that in carrying into effect the bequests of common shares of United States Steel stock the administrators shall deliver to the legatees three shares of common stock for each one stated in the will, the theory of decision being that it was the intent of the testator to bequeath Steel common stock equivalent to the stock that existed when he made his will.

A case involving such a direction in respect of a general legacy seems not to have arisen heretofore in New York. It is argued by appellants that the decision in effect seems to regard the legacies as general legacies for the purpose of avoiding their loss by ademption, but to regard them as specific legacies for the purpose of replacing the stock in kind multiplied by the number of replaced shares resulting from the split-up.

Respondents argue that merely because it has been held, as it was in *Matter of Hicks* (272 App. Div. 594), that a specific legatee is entitled to the equivalent number of shares following a stock split, it does not necessarily also follow that the converse must be held that a general legatee is never entitled to such a benefit.

There seems no authoritative case in New York holding against the result reached by the Surrogate and his decision

turned upon his evaluation of the testator's intent. What the testator intended to do is the ultimate aim in all will construction, and the rules that have been made are all bent in this direction. The intent, of course, is carried out if it is not unlawful.

We do not think the Surrogate's view is unreasonable in this respect. It seems consistent with the decision in 1950 by the Supreme Court of Pennsylvania in *Matter of McFerren* (365 Pa. 490).

The decree should be affirmed, with costs to each party filing a brief payable from the estate.

FOSTER, P. J., HEFFERNAN, BREWSTER, COON and HALPERN, JJ., concur.

Decree affirmed, with costs to each party filing a brief payable from the estate.