In the Matter of the Accounting of HARRY F. WHITON et al., as Trustees under the Will of EMMA D. ROSS, Deceased, Respondents. JEANETTE B. DONNELL, Appellant; CHARLES ADEY et al., Respondents.

Third Department, March 12, 1953.

*Desmond F. Reilly* for appellant.

*Carl O. Olson* for Harry F. Whiton and another, as trustees, respondents.

*Joseph B. Mulholland* for Charles Adey and others, respondents.

BERGAN, J. Testatrix created in her will a life estate in trust for the benefit of her niece. She provided: " After the decease of my said niece " that " my estate " is to be " distributed " in accordance with certain paragraphs of the will which followed.

The paragraph that has caused the controversy contains the expression " I give, devise and bequeath " a certain fractional part " of my estate remaining after the aforesaid trust ", and continues, " to my following named cousins, or the survivor or survivors of them, except as hereinafter stated ".

Seven cousins were named. After the name of Charles Adey, who is one of them, testatrix added this clause: " if he be living at the time of the decease of my niece, and if not living, then his share shall go to his children ", who are named. Charles Adey survived the life beneficiary.

Three of the named cousins survived the testatrix but died before the life beneficiary. The question here is whether their shares vested at the time of the death of testatrix. The Surrogate held that they did not, and that, therefore, because they did not survive the life beneficiary, their heirs have no interest in this part of the estate which is to be divided among the named cousins who did survive the life beneficiary. One of the heirs of Elizabeth Bly Johnson appeals.

When the draftsman of a New York will uses a term like " I give * * * my estate remaining after " a certain event, to a group of persons " or the survivor or survivors of them " he is bound to expect, if he reads the cases on the subject, that the court will hold that the time-test of who may be the " survivor or survivors " is the death of the testator and not the happening of the event.

A good initial argument can be made that logically the rule of construction ought to be the other way. Indeed, the New York rule has been criticized, not merely as " an extreme application of the constructural preference for early indefeasibility ", but as a rule which follows " The older English cases " in this respect, and a rule, moreover, which is honored only in the minority of States. (2 Powell on Law of Real Property, § 328, pp. 723, 724.)

But such as the rule is we feel required to follow it because the contextual indications of an intent to postpone vesting in the cousins until the death of the niece in the will before us are not clear enough or strong enough to take this will over into a class of recognized exceptions to the general New York rule.

A few cases will indicate how solid the rule is. In *Matter of Bolton* (257 App. Div. 760) the testator gave $20,000 to his executors in trust with directions to pay the income to his wife. At her death or remarriage the will provided that " I give and bequeath the same to " his named children " or the sur-

vivors of them ''. This court held, per FOSTER, J., that there had been a vesting at the time of testator's death so that after the wife's death the shares of two sons who had died after the husband, but before the wife, were payable to the personal representatives of their respective estates. There was affirmance (282 N. Y. 728).

The New York rule stems largely from an early and frequently cited case decided in 1840 (*Moore* v. *Lyons,* 25 Wend. 119). The testator had given the '' negro-woman Mary '' a life interest in real estate. The will provided that '' from and after her death, I give '' the real estate to certain named persons '' or to the survivors or survivor of them ''. It was held upon a thorough examination of the English cases disclosed in the opinion that the estate vested in the remaindermen when the testator died and not when the life beneficiary died.

The rule had become so crystalized by 1885 that Judge DANFORTH in *Matter of Mahan* (98 N. Y. 372, 376) remarked that the general rule is '' well settled '' that if '' there be a direct gift to legatees, a direction for payment at the happening of a certain event shall not prevent its vesting ''. In the same direction see *Healy* v. *Empire Trust Co.* (276 App. Div. 305, affd. 301 N. Y. 620).

When there are clear indications of an intent for a later vesting that intent will be effectuated by the court; but in equivocal circumstances the court would follow the general New York rule favoring a choice for an earlier rather than a later vesting.

It seems to us that the case which respondents make on intent does not rise to a level which would require vesting to be postponed to the death of the beneficiary rather than to occur at the death of the testatrix. The strongest argument in support of the later time of vesting is the fact that in providing for her cousin Charles Adey the testatrix added the condition '' if he be living at the time of the decease of my niece, and if not living, then his share shall go to his children ''.

This, the respondents argue, shows that the testatrix believed that the benefits she was giving to her cousins would not vest until the death of her niece because she provided for Charles Adey's children specifically in the event Charles Adey did not survive the niece as life beneficiary. If she knew he would become vested on her own death this, it is argued, would have been unnecessary.

But, of course, she may also have had in mind preventing in Charles Adey's case any disposition of a vested interest against the welfare of his children between the death of the testatrix and that of the life beneficiary — or postponing his choice in this respect as long as possible.

What the testatrix, or the draftsman of her will, believed to be the legal effect of giving a fractional part of her " estate remaining after the aforesaid trust ", would give some help in construing her language as to the time the estate thus given was to become vested.

But her notions of what the legal effect was is not necessarily controlling in the case of words of well-worn significance. If a draftsman uses words to which a meaning is regularly attributed by the court he runs a considerable risk that the words he uses will be construed again that way even though he may have had something else in mind.

But even though the testatrix used words in the case of Charles Adey and his children which suggests she felt there might be no vesting until the death of the life beneficiary, she used other contextual language which leaves in doubt, at least, her opinion as to the time when there would be a vesting of the part of her estate " remaining after the aforesaid trust ".

In the ninth paragraph of her will she provided for the distribution of a further fractional part of her estate " remaining after the aforesaid trust ". As to two of the beneficiaries she provided where their share should go if they died before the life beneficiary. As to all the rest of that class, the will continued, if any shall " die before my said niece, then her share shall lapse ". This seems to indicate that the testatrix believed that there would be a vesting on her own death, since if she believed vesting would be postponed until the death of the life beneficiary it would have been quite unnecessary to provide for a lapsing of benefits in the case of a death before that time.

Thus we have two different and inconsistent views possible to be drawn from the context of the will as to the understanding testatrix had of the legal effect of the words she used and in such a case it is usual to resolve the doubt by giving the words their usual judicial meaning.

Whatever testatrix may have had in mind about Charles Adey's interest in relation to the survivorship of his children, she imposed no such limitation or restriction on vesting of the interest of the other cousins, and especially none in the case of Elizabeth Bly Johnson whose rights are asserted on this

appeal. By the actual terms she used as to her it would be reasonably expected under New York law that survivorship of the testatrix herself would be the test of vesting, and nothing she said specifically as to Elizabeth Bly Johnson whittled down that right or suspended the vesting.

If we look into earlier contextual language we see the use of words, highly consistent with the New York rule, that " after " the decease of the life beneficiary " my estate " is to be " distributed " as thereafter directed. This seems to indicate distribution after the death of the life beneficiary of an earlier vested interest rather than a vesting as of that time.

The language employed was cast in terms which have been construed to mean a vesting on the testatrix' death. A debatable case of intent — one that can be argued reasonably both ways as this is — does not bring the case out of the rule.

The decree should be reversed and the proceeding remitted to the Surrogate's Court for further proceedings in accordance with this opinion, with costs to appellants payable from the estate.

HALPERN, J. (dissenting). I recognize that the courts of this State, in construing a gift of a remainder to a group of persons or their survivors, have indicated a preference for the construction which relates the words of survivorship to the date of the death of the testator rather than to the date of the termination of the preceding life interest. However, I do not think that this preference is as strong as the majority opinion suggests. In each of the cases cited, the decision was based on a finding of the testator's actual intention, rather than upon an arbitrary constructional preference.[1]

---

[1] *Matter of Bolton* (257 App. Div. 760, 762, affd. 282 N. Y. 728) turned upon the testator's " general scheme, as expressed by various provisions of the will, ⁎ ⁎ ⁎ to distribute his property with fair equality among his children ". The words of survivorship were referred to the death of the testator " in view of the manifest intent of the testator to reach equality ".

In *Moore* v. *Lyons* (25 Wend. 119, 125) the court stressed as the objective of the construction of the will, the ascertaining of the actual intent of the testator. The court pointed out that if the words of survivorship were referred to the date of death of the life tenant, the children of a deceased child of the life tenant would be left with nothing, a result which the court found to be " inequitable " and contrary to " the evident general intention of the testator ".

In *Matter of Mahan* (98 N. Y. 372, 375, 376) the will of the testatrix provided that her executor should hold two parcels of real estate in trust to apply the income for the maintenance of her mother and youngest son and that upon the death of her mother and the becoming of age of her youngest son, one of the

The overwhelming weight of authority is opposed to the New York rule. The American Law Institute has taken the position that: "In a limitation purporting to create a remainder or an executory interest, a description of the intended takers as persons 'who survive,' or who are 'living,' or by other language of the same import, but which fails to designate the time to which such takers must survive, tends to establish the time of the termination of all preceding interests as the time to which survival is required" (3 Restatement, Property, § 251).

The Institute states that it prefers this construction because it produces the result "'which conforms more closely to the intent commonly prevalent among conveyors similarly situated'". (§ 251, Comment a, p. 1267.) A testator who makes a gift to a remainderman contingent upon his "surviving", immediately after having referred to the termination of the prior estate upon the death of the life tenant, normally intends to require that the remainderman should survive the life tenant, and not merely the testator himself.

---

parcels should be given to the youngest son. All the rest, residue and remainder of her property was then given to her children, "the survivor or survivors of them, share and share alike". Two of the children predeceased the life tenants. The court held: "The intention of the testatrix, as gathered from those provisions, was to provide not only for the support of her mother during life, and the maintenance of her son James during his minority, but also for her other children". On this basis, the court held that the words of survivorship should be held to refer to the death of the testatrix.

The decision in *Healy* v. *Empire Trust Co.* (276 App. Div. 305, 308, affd. 301 N. Y. 620) also turned upon a finding of actual intent on the part of the testator to vest the estate immediately upon testator's death. The Appellate Division said: "Apart from authority or rules of construction, which support that view, we reach the conclusion on the testator's use of language in its context." The court stressed the fact that the will showed that the draftsman was meticulous in his use of words and that in numerous places in the will where the draftsman intended to make survival of a life tenant the condition of a remainder, he did so "specifically" "by apt language". This, the court pointed out, was in contrast with the "absence of such qualifications" in the provision for the gift to the legatees whose interests were in controversy.

That the constructional preference is far from firmly settled in this State appears from several decisions of the Court of Appeals, holding that the rule referring words of survivorship to the time of testator's death applies only to an absolute gift to one person and, in case of his death, a gift over to another, and that "the rule has no application to a case where the first devisee or legatee takes a life interest". (*Mullarky* v. *Sullivan*, 136 N. Y. 227, 231; *Lyons* v. *Ostrander*, 167 N. Y. 135, 140, and the cases there cited; see, also, 7 Warren's Heaton Surrogates' Court Practice [6th ed.], § 77, p. 515.)

The New York rule has been criticized by the leading scholars in the field and re-examination of its basis has been urged.[2]

In this situation, we ought to be quick to seize upon, and to give effect to, any evidence that the testator intended to have the words given their natural meaning and not the artificial meaning forced upon them by the New York rule. The New York rule is, after all, only a rule of constructional preference and not a rule of law. It ought to prevail only if there is no evidence to the contrary. The New York rule ought properly

[2] "Practically, the constructional preferences of today's law, theoretically based upon serving the public interest, express conclusions reached by courts decades or centuries ago and crystallized into their present form by frequent judicial applications. In this fashion originated the shibboleths that 'early vesting' and 'early indefeasibility' are 'socially desirable' and hence that there should be a constructional preference for early vesting and early indefeasibility. Perhaps these preferences still represent sound judgments as to present social interests, but it is certain that the considerations of social policy which originally caused their formulation have for the most part been forgotten, and when dug out are found to have largely, if not wholly, ceased to function. [Foot-note: For example, the constructional preference for early vesting developed as a judicially evolved device to escape the rule of the early common law denying the transferability of contingent interests and to make inapplicable the destructibility of contingent remainders. The ends so served were of large social importance. These ends no longer need to be served, since contingent interests are in most states freely transferable and wholly indestructible.] If these rules still deserve the importance they now have in the constructional process, this must be due to new considerations of social policy which afford new support for the old conclusions. It is time that our legal thinkers and courts do some hard thinking as to why there should be a constructional preference for early vesting and early indefeasibility." (2 Powell on Real Property, § 318, pp. 683–684.)

"Thus, a will limitation 'to my wife B for life, remainder to my surviving children,' is susceptible of two constructions. It could mean 'remainder to the children who survive me.' Equally well, it could mean 'remainder to my children who survive my wife.' The older English cases favored the former of these two constructions. [Foot-note: The rule no longer is accepted in England, In re Gregson's Est., 2 DeG. J. & S. 428, 46 Eng. Rep. 441 (1864).] New York, and a minority of other states, still favor this view, saying that words of survivorship refer to the death of the testator unless a different meaning is clearly manifested. This is an extreme application of the constructional preference for early indefeasibility. The majority rule today, where a limitation is to 'the surviving children' of the testator, or to persons 'who survive' or who are 'living' or who are described by a similar added word, phrase or clause and where the limitation fails to designate the time to which these persons must survive, is to place the critical date at the time of termination of all preceding interests." (2 Powell on Real Property, § 328, pp. 723–724.) (See, also, American Law of Property [vol. 5], § 21.3, subd. a, p. 129; § 21.15, p. 151; Walsh on Future Estates in New York, § 12, p. 51; Kales on Estates and Future Interests, § 528, note 91, p. 621.)

to be invoked only in a case in which there is nothing in the will beyond the bare use of the words "survivor or survivors" to give a clue to the testator's actual intention.

As this court said only a few months ago, "What the testator intended to do is the ultimate aim in all will construction, and the rules that have been made are all bent in this direction. The intent, of course, is carried out if it is not unlawful" (*Matter of Fitch*, 281 App. Div. 65, 68).

I believe that there is clear evidence in this case of an intention on the part of the testatrix to relate the words of survivorship to the time of the death of her niece, which marks the termination of her equitable life interest.

In Paragraph Fifth of the will, the testatrix gave her entire residuary estate to trustees to pay the income to her niece "during the term of her natural life, and after the decease of my said niece, this trust is to cease and terminate".

In the next paragraph (Sixth), the testatrix provided: "After the decease of my said niece and the termination of aforesaid trust, my estate is to be distributed as follows by my executors as provided for in the following paragraphs".

Then followed a gift of four-sixteenths of the residuary estate to a charitable legatee and then came the provision which is the subject of the present controversy: "Eighth: I give, devise and bequeath seven-sixteenths of my estate remaining after the aforesaid trust to my following named cousins, or the survivor or survivors of them, except as hereinafter stated: George Adey, Cohoes, N. Y.; Janet Adey, Cohoes, N. Y.; Charles Adey, a brother of Janet Adey, if he be living at the time of the decease of my niece, and if not living, then his share shall go to his children, George Adey, Lucy Adey and Constance Adey; John Swartout, Schenectady, N. Y.; Lenora McNiven Hoch, Worcester, Mass.; John McNiven, Worcester, Mass.; and Elizabeth Bly Johnson, Salida, Cal."

The repeated references to the death of the niece in the provisions immediately preceding the quoted paragraph give us an initial clue as to what the testatrix had in mind at the time to which the cousins named in Paragraph Eighth would be required to survive in order to take.

But what seems to me to be the controlling benchmark of the testatrix' intention is the language of the exception in favor of the children of Charles Adey, who are to take in the event of his failure to survive to the crucial time. The crucial time is here explicitly stated as the death of the niece. In the event of the failure of any of the other cousins to survive to the

crucial time, their share is to go to the survivors but it is provided that in the case of Charles, his share is to go to his children, George, Lucy and Constance Adey.

While the time to which survivorship is required is left blind in the opening clause, it is plainly set forth in connection with the gift to Charles or his children, and the plain expression there given fills in the gap in the opening clause. The concept of survivorship which the testatrix had in mind is fully spelled out with reference to Charles, as consisting of survivorship of the niece. The only reasonable inference is that the words " survivor or survivors " in the opening clause referred to the same time, the time of the decease of the niece.

The words " except as hereinafter stated " immediately following the words of survivorship in the opening clause reinforce this conclusion. The quoted words serve as a connecting link between the reference to survivorship in the opening clause and the explicit reference to survivorship at the time of the death of the niece in the clause relating to Charles. The linking together of the two provisions by the " except " clause helps to make it clear that the survivorship requirement relates to the same time in both provisions.

The words " except as hereinafter stated " relate to and qualify the words immediately preceding them, " to my following named cousins, or the survivor or survivors of them ". That is to say, the cousins who survive to the crucial time are to take " except " that, " as hereinafter stated ", if Charles does not survive, his share is not to go to the survivors, as it would ordinarily in the absence of an exception, but is to go to his children. When the paragraph is read as a whole in this way, with meaning given to all its parts, it is obvious that the crucial time must be the death of the niece because that is the time to which Charles is explicitly required to survive in order to take, and that is the time as of which his children will be substituted for him, in the event of his failure to survive, as an exception to the direction that the estate shall go only to the surviving cousins. The " except " clause colors the words of survivorship and clearly relates them to the time specified in the text of the exception " [t]hereinafter stated ".

The testatrix obviously had in mind that the right of Charles to take would be determined at the same time as the time when the right of all the other cousins to take would be determined and when the amount of each one's share would be finally fixed. The provision cannot be read in any other way logically and grammatically. The clause " if he be living at the time of the

decease of my niece '' which follows the name of Charles is merely a repetition and more elaborate spelling out of the requirement of survivorship applicable to all the cousins.

It is argued by the appellant that Paragraph Eighth should be read as vesting indefeasible shares in all the cousins surviving at the time of the death of the testatrix, except Charles, and as vesting in him at that time a defeasible share which would become indefeasible upon his surviving the niece but which would go to his children if he failed to survive her. This is plainly a forced construction, advanced in an effort to give meaning to all the words of the will and still to reconcile it with the artificial New York rule. The intention of the testatrix was obviously to favor Charles and his family and to preserve his share for his family even though he failed to survive until the crucial time, whereas as to the other cousins nothing was to go to their children if they failed to survive to the crucial time. Under the appellant's construction, the clause relating to Charles, instead of favoring him, places him at a disadvantage in comparison with the other cousins. His interest would not become indefeasible unless and until he survived the niece, whereas the interests of the others would become indefeasible upon the death of the testatrix.

Furthermore, the language of the will is wholly inappropriate for a gift to Charles of the type contended for by the appellant. The appellant's construction would give Charles a vested interest subject to defeasance, with a gift over to his children upon his death before the testatrix' niece. The language of the gift to Charles, '' if he be living at the time of the decease of my niece, and if not living '' then to his children, is inappropriate to express the idea of the divesting of an interest previously vested defeasibly. On the contrary, it speaks in terms of the making of an original gift, as of the time of the death of the niece, either to Charles or to his children, depending on whether Charles was living at that time. The language is that of a gift of alternative contingent remainders, one or the other of which is to vest at the time of the death of the niece. This language is consistent only with our adopting a construction of the gift to all the cousins, which makes their shares contingent upon their surviving to the same time.

Furthermore, as already indicated, the appellant's construction is inconsistent with the words '' except as hereinafter stated '' which appear in the opening subparagraph of Paragraph Eighth as a qualification of the words of survivorship. If the provision as to Charles' share was only a provision for

a defeasance, upon his failure to survive the niece, of a share previously vested in him, along with that of all the other cousins upon their surviving the testatrix (as appellant argues), the provision would not constitute an exception to the gift to the surviving cousins but would merely be an additional limitation upon Charles' share, to which there would be no need to make any reference in the opening subparagraph.

It is thus apparent that great difficulty is encountered in attempting to reconcile the language of the will with the appellant's construction, whereas if the words '' survivor or survivors '' are construed to refer to the time of the death of the niece, the difficulties of reconciliation disappear.

Further support for the construction here advocated is found in other provisions of the will. For example, in Paragraph Fourth there is a gift to '' George Adey, Cohoes, N. Y.'' (who is described in exactly the same way in the list of cousins in Paragraph Eighth), with the provision that '' If George Adey predeceases me, this legacy is to lapse ''. The testatrix and the draftsman of the will were apparently unaware of the fact that a gift to a cousin would have lapsed upon predecease under the law and that there was no need for a specific provision to that effect. However, the provision throws useful light upon the construction of Paragraph Eighth because it shows that, when the testatrix intended to provide that a legacy should fail upon the legatee's failure to survive her, but that it should not be subject to any further requirement of survival, she used the precise language '' predeceases me ''. If she had had a similar intention with respect to the gift to the cousins in Paragraph Eighth, she would likewise have provided that the gift to the cousins should go to those who survive '' me '' or that the gift should go to all the cousins except those who '' predecease me ''.

The provisions of Paragraph Ninth also support the construction of Paragraph Eighth here advocated. In Paragraph Ninth, equal shares of the remaining five-sixteenths of the residuary estate are given to fourteen named persons who were not related to the testatrix. As to one of them, it is provided that if she '' dies before my said niece, then her share shall go to '' another named person. As to another legatee, it is provided that if he '' shall die before my said niece, his share shall go to his heirs ''. As to the other twelve legatees, it is provided that '' If any of the other legatees named in this paragraph shall die before my said niece, then her share shall lapse ''.

It is apparent that a common scheme dominated the thinking of the testatrix; she wanted to make the right of any legatee to

take a share of the residuary estate under Paragraph Eighth or Paragraph Ninth dependent upon his or her surviving the niece. Since the gift to the cousins in Paragraph Eighth was in the form of a group gift, the provision that the gift should go to the " survivor or survivors of them " was relied upon as sufficient to express the idea that those who predeceased the niece were not to take. The gifts to the nonrelatives in Paragraph Ninth were in the form of individual gifts; hence a more explicit provision was necessary to carry out the testatrix' scheme, to the effect that a legatee who failed to survive the niece was not to take any share. The words " survivor or survivors " in Paragraph Eighth accomplished the same result, with respect to the group gift therein provided, as the provision for " lapse " in the event of death before the niece accomplished in the Ninth Paragraph.

In view of the discussion in the briefs as to whether the interests of the legatees under Paragraphs Eighth and Ninth were " vested " or " contingent ", it may be appropriate to point out that in this case it is not material whether we say that survivorship of the niece was a condition precedent to the vesting of the interest or whether we say that the interest vested at once, subject to defeasance in the event of failure to survive the niece.[3] In either form of statement, survivorship would be required in order to entitle the legatees to take an indefeasible interest.

I would affirm the decree, with costs.

FOSTER, P. J., COON and IMRIE, JJ., concur with BERGAN, J., HALPERN, J., dissents in an opinion.

Decree reversed, on the law, and proceeding remitted to the Surrogate for further proceedings in accordance with this opinion, with costs to appellant payable from the estate. [See *post*, p. 1059.]

---

[3] " *i. Immateriality of whether requirement of survival is a condition precedent or a basis of defeasance.* In many controversies the determination of the existence or non-existence of the requirement of survival fully resolves the problems at issue. A failure to survive to the end of the period for which the requirement exists ends the interest equally whether survival was a condition precedent or a basis for the defeasance of the interest in question. Many of the characteristics of future interests subject to a condition precedent and of future interests vested subject to complete defeasance are the same, as for example, with respect to transferability by conveyance inter vivos (§ 162), intestate succession (§ 164), intestate succession (§ 165) and subjection to the claims of creditors (§ 166–168)." (3 Restatement, Property, § 250, Comment i, pp. 1263–1264.)