208 A.2d 509 (1965)
Irénée duPONT, Jr., as Trustee of a Charitable Trust under a Deed of Trust dated December 25, 1947, Defendants Below, Appellant,
v.
Irénée duPONT, Jr., Crawford H. Greenewalt and Ernest N. May, as Executors of the Estate of Irénée du Pont, Plaintiffs Below, Appellees, and
Irénée duPont, Jr., Crawford H. Greenewalt and Ernest N. May, as Trustees under the Will of Irénée duPont, Defendants Below, Appellees.
Supreme Court of Delaware.
March 4, 1965.
Clair John Killoran, of Killoran & VanBrunt, Wilmington, for appellant.
S. Samuel Arsht and David A. Drexler of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellees.
WOLCOTT, Chief Justice, CAREY, Justice, and DUFFY, President Judge, sitting.
*510 WOLCOTT, Chief Justice.
This is an appeal from a judgment of the Court of Chancery in favor of the Trustees under the Will of Irénée duPont and against Irénée duPont, Jr., Trustee of a charitable trust established by Irénée duPont during his lifetime.
Irénée duPont died on December 19, 1963 leaving a substantial estate, the disposition of which was governed by his Will dated August 12, 1948, a first Codicil dated August 25, 1950, and a second Codicil dated March 13, 1961. The Will of the testator left the bulk of his estate in trust for the benefit of his children. With its terms we are not concerned. This cause concerns the proper construction of the two Codicils to his Will and the effect of that construction upon the disposition of the proceeds of sale of General Motors Corporation (General Motors) stock of which the testator became the owner by reason of his status as a stockholder of Christiana Securities Company (Christiana).
We make brief reference to the history and background concerning the making of the two Codicils. The testator was a large stockholder of Christiana, the value of the stock of which is in large part derived from its extensive ownership of E. I. duPont deNemours & Company (duPont Company) common stock. In August, 1950 he instructed his counsel that inasmuch as he desired to continue his financial support of Biochemical Research Foundation, a cancer research organization, he had decided to do so by leaving 2000 shares of Christiana stock to an inter vivos charitable trust of which his son was trustee. The purpose of this charitable trust is to distribute its income for charitable purposes. Accordingly, he executed the first Codicil on August 25, 1950 by which he bequeathed to Irénée duPont, Jr., Trustee, 2000 shares of the common stock of Christiana to be held subject to the terms of the Charitable Trust Agreement. These 2000 shares at the time had a quoted market value of $10,400,000.
On March 10, 1961 Christiana put into effect an 80 for 1 split of its common stock. On March 13, 1961 the testator executed the second Codicil revoking the first Codicil, and bequeathing to his son, Irénée duPont, Jr., Trustee under the charitable trust, 160,000 shares of Christiana common stock. At that time the 160,000 shares had a quoted market value of $31,680,000.
Meanwhile, in 1949 the U. S. Government brought an anti-trust action against the duPont Company because of its ownership of 23% of the outstanding common stock of General Motors. Ultimately, on June 27, 1961, the Supreme Court of the United States directed the trial court to enter an order equitably divesting the duPont Company of its General Motors stock and requiring Christiana and the duPont family to dispose of the shares received as a result of the divestiture. United States of America v. E. I. duPont deNemours & Company et al., 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 and 365 U.S. 806, 81 S.Ct. 687. The final judgment of the trial court ordering divestiture was entered on April 26, 1962.
*511 On July 9, 1962 Christiana received from duPont Company a distribution of General Motors stock which it in turn distributed to its stockholders on November 14, 1962. As a result, the testator received 180,800 shares of General Motors as a stockholder of Christiana. All of these shares, pursuant to the divestiture order, were sold and the proceeds deposited in the testator's bank account on November 20, 1962. Of the total proceeds after payment of taxes the sum attributable to the 160,000 shares of Christiana bequeathed by the second Codicil is $2,055,786.
On November 20, 1962 a petition was filed in the Court of Chancery for the appointment of guardians for the testator who, by that time, was incapable of taking care of his business or personal affairs by reason of disability brought about by senility and osteoarthritic changes. On December 31, 1962 guardians of the testator were appointed by the Court of Chancery. It is apparently agreed that at least by the time of the first distribution of General Motors stock by Christiana the testator no longer had testamentary capacity.
On November 13, 1963 Christiana announced a further distribution of General Motors stock received from duPont Company to its stockholders of record as of November 26, 1963, distribution to be made on January 6, 1964. The testator died on December 19, 1963. Upon receipt of the second distribution of General Motors stock the executors of the testator sold it. The net amount of the proceeds of this sale attributable to 160,000 shares of Christiana is $4,052,100. On the date of testator's death the quoted market value of 160,000 shares of Christiana, excluding both distributions of General Motors stock, was $37,600,000.
This cause was commenced by the executors of the testator who filed a complaint seeking instructions as to the proper distribution of $6,108,785.63 held by them as the proceeds of sale of the General Motors stock. The trustees under the Will of the testator and the trustee of the charitable trust all claim the entire fund. These parties agree, and so do we, that while the case is concerned with the right to cash, some of which was not received until after the death of the testator, the right of ownership is to be decided as though the actual General Motors stock, rather than the proceeds of its sale, is before the court.
We are required to decide whether the proceeds of the sale pass under the residuary clause of the testator's Will to his testamentary trustees, or whether they are to be considered a part of the legacy in the second Codicil and thus pass to the charitable trustee.
The answer to the question before us depends upon the proper construction to be given the Codicil leaving the 160,000 shares of Christiana. This involves a construction of the particular language of the Codicil. All rules of construction of testamentary language have as their purpose the ascertainment of the intent of the testator. This intent is to be ascertained from the actual language used by the testator in the light of his knowledge of the circumstances at the time he used it. Under the guise of construction a court may not ascribe to the testator an intent not evidenced or justified by the testamentary language which might seem natural or proper to the court by reason of the circumstances of the testator. Bird v. Wilmington Soc. of Fine Arts, 28 Del. Ch. 449, 43 A.2d 476.
Initially, we observe, the precise question before us is of first instance in this State and probably of first instance in the country as a whole for no precedents directly in point from other jurisdictions have been cited to us, nor have we found any. We think cases such as Chase Nat. Bank v. Deichmiller, 107 N.J.Eq. 379, 152 A. 697; Butler v. Dobbins, 142 Me. 383, 53 A.2d 270, 172 A.L.R. 361, and Seifert v. Kepner, 227 Md. 517, 177 A.2d 859, holding that stock resulting from a split, stock dividends, and an 80% liquidating dividend *512 pass under the legacy on the theory that to hold otherwise would defeat the testamentary intent, are not controlling because the divestiture of General Motors stock is none of these.
At the same time cases exemplified by Sherman v. Riley, 43 R.I. 202, 110 A. 629, holding that stock dividends declared prior to the death of the testator do not pass under the legacy while those declared after his death do, are of no assistance for the reason that the divestiture of the General Motors stock was not a stock dividend.
Two cited cases more nearly touch on our problem but are not persuasive  Griffith v. Adams, 106 Conn. 19, 137 A. 20, and In re Brann, 219 N.Y. 263, 114 N.E. 404, L.R.A.1918B, 663. The Griffith case was one in which from the evidence the court found the testator's intent to be to exclude from a legacy of stock a dividend received by him in the form of stock of another company. The Brann case was one involving a legacy of Standard Oil stock by a testatrix who received in her lifetime after execution of the Will stock of companies owned by Standard Oil which it was required by an anti-trust decree to distribute to its stockholders. The court held these stocks did not pass under the legacy because it could find no "substantial identity" between the Standard Oil stock and the stock distributed to the testatrix. We think this test to be of doubtful assistance.
We then must ascertain the intent of the testator solely from the language of the Codicil and the circumstances known to him. The legacy is to the trustee of a charitable trust from which it follows, of course, that the testator intended to benefit handsomely the charitable legatee, by the first Codicil to the extent of 2000 shares of the old stock, and by the second Codicil to the extent of 160,000 shares of the new. We think there is no significance to the increase in the number of shares beyond the fact that obviously the testator intended his original gift to be the same after the 80 for 1 stock split.
The charitable trustee argues that the plain intent of the testator was to benefit the charitable trust by a legacy of Christiana shares which necessarily included all the rights underlying and represented by such shares. In other words, the testator intended to bequeath an aliquot interest in the assets of Christiana represented by the number of shares bequeathed.
We think, however, that from the language of the bequest and the surrounding circumstances, no specific intent on the part of the testator as to this can be ascertained. In terms, the bequest is merely of a number of shares of stock. We think the law clear that shares of stock do not have any specific or aliquot interest in the assets of the corporation. The shareholder has essential rights to share in the profits and in the distribution of assets on liquidation, but no specific interest in the corporate assets. 11 Fletcher Cyclopedia Corporations, § 5100; Buechner v. Farbenfabriken Bayer Aktiengesellschaft, 38 Del.Ch. 490, 154 A.2d 684.
Thus it is, we think, clear that the testator could not have intended at the time of the second Codicil to bequeath to the charitable trustee shares which carried with themselves specifically an interest in General Motors stock owned not by Christiana but by duPont Company, the shares of which were not the subject of the gift.
We think, therefore, that the Chancellor was correct in holding that the shares of General Motors stock distributed to testator as a stockholder of Christiana were not specifically intended by him to pass under the legacy. This being the case, his general intent, viz., to bequeath a particular number of Christiana shares governs, and the General Motors distribution passes under the residuary clause of his Will.
*513 The charitable trustee argues that the Chancellor committed error in applying what is described as the test of "substantial frustration." We think, however, he misconceives what the Chancellor did. The so-called test of "substantial frustration" was used by the Chancellor substantially as a test of his conclusion to see if it had defeated the charitable intent of the testator evidenced by the second Codicil. Since the value of the Christiana shares at the time of the first Codicil had a value of $10,400,000, and the same shares, exclusive of the General Motors divestiture, had at the time of his second Codicil a value of $31,680,000, he concluded that the testator's charitable intent had not been frustrated. We can find nothing too objectionable in this practical test of the result.
For the foregoing reasons the judgment below is affirmed.