OPINION OF THE COURT
Bernard M. Bloom, S.
This is the first New York decision to consider the effect of the recent AT&T divestiture on a bequest of AT&T stock. This is a proceeding brought by Georgette Blincoe, coadministratrix c. t. a., for a construction of article second of the testatrix’s last will and testament. The testatrix died on September 13, 1985 at the approximate age of 89. The last will and testament of the testatrix, dated February 6, 1982, and a codicil thereto, dated September 27, 1984, were admitted to probate by this court on December 2, 1986. Letters of administration c. t. a. were issued to the petitioner and Louis N. Parise, the respondent.
Article second of the testatrix’s will reads as follows: "second: I give and bequeath to each of the following legatees the following number of shares of capital stock of American Telephone and Telegraph Company owned by me at the time of my death”, and thereafter names 17 legatees, each to receive varying numbers of shares. A total of 1,625 shares of stock were bequeathed under article second. The petitioner is a legatee of 350 shares. Under article sixth, the testatrix bequeathed the residue of her estate in equal shares to and among Grace Rossi, Clara Dooley, Margaret Dowd, Florence Kuiz and the petitioner. It is undisputed that the testatrix owned 2,262 shares of AT&T stock at the time of execution and at the time of death. Therefore, 637 shares pass under the residuary.
Under the aforementioned codicil, the testatrix deleted Clara Dooley as a residuary legatee, she having died, and in her place named Louis Parise, the respondent who was a friend of the testatrix. This replacement was the only change made, and in all other respects, the will was approved, ratified and confirmed.
The value of the testatrix’s gross estate is approximately $600,000 comprised primarily of stocks, valued at approximately $350,000, a house and property, valued between $175,000 to $225,000, jewelry and miscellaneous items, valued at approximately $9,500, and two bank accounts, in the amount *688 of approximately $15,000. The testatrix’s closest relatives are four first cousins, once removed, of which only one receives a bequest under the will.
The need for a construction arises as a result of the reorganization of AT&T, which occurred between the date of the execution of the will, February 6, 1982, and the date of the testatrix’s death, September 13, 1985.
Until 1982, AT&T had a monopoly over the United States telecommunications industry, providing both local and long distance telephone service and severely curtailing competition in this industry. As a result, the United States Government instituted two antitrust actions against AT&T and Western Electric Co., Inc., requesting, amongst other relief, the divestiture from AT&T of its holdings in 22 operating companies, i.e., subsidiaries, and thereby stripping AT&T of its local telephone functions. As of 1980 AT&T owned all of the outstanding stock of the operating companies, with minor exceptions. Under the terms of a judicially approved consent decree, and a judicially implemented plan of reorganization incorporated thereto, AT&T agreed to combine its 22 operating companies into 7 regional holding companies (hereinafter referred to as RHCs), and AT&T was to divest itself of its holdings therein. (United States v American Tel. & Tel. Co., 552 F Supp 131 [DDC 1982].) Under the terms of the plan of reorganization, AT&T would transfer to each RHC, in exchange for the latter’s voting stock, the stock of the appropriate operating company and other assets. In turn, AT&T would distribute to its stockholders 1 share of each of the 7 RHCs for every 10 shares of AT&T stock owned by AT&T stockholders. Fractional shares would not be issued but would be aggregated and sold and the cash proceeds distributed to the stockholders. The divestiture was effective as of January 1, 1984, and according to the petitioner, shareholders were issued stock certificates for the seven RHCs on February 15,1984.
As previously mentioned, the testatrix owned 2,262 shares of AT&T stock at the time of her death, which had a date of death value of $47,366. Further, at the time of her death, the testatrix owned 226 shares of stock in 6 of the RHCs and 678 shares in Bell South, an RHC which split 3 for 1 on May 7, 1984. The total date of death value of the shares held in the 7 RHCs was $115,697.
On the date the will was executed, February 5, 1982, AT&T stock was listed on the NYSE at 57%. On the date the codicil *689 was executed, September 27, 1984, AT&T was listed at 20, and the shares in the 7 RHCs ranged between 63% to 77%, with the exception of Bell South, listed at 32% because of the 3-for-1 split. On the date of death, September 13, 1985, AT&T was listed at 20%. Therefore, as a result of the divestiture, the value of AT&T stock was significantly diminished.
The issue before the court is whether the preresiduary legatees of the AT&T shares under article second are entitled to a proportionate interest in the additional shares in the RHCs or whether those additional shares pass under the residuary clause. The petitioner, who receives 350 shares of AT&T stock, in addition to a one-fifth share in the residue, argues that the legatees under article second are entitled to a proportionate interest in the shares of the 7 RHCs in light of the diminished value of the AT&T stock between the date of execution and the date of death. The respondent, a residuary legatee, contends that the language of article second, wherein the decedent disposed of her AT&T stock owned by her "at the time of her death”, reveals an intent to limit the disposition to only the AT&T stock owned at the time of her death, and does not include the shares of stock in the RHCs.
As a result of the divestiture and the issuance of additional shares, the subject matter of the stock bequests has become ambiguous. Where a latent ambiguity exists, the general rule is to ascertain the testator’s intent. (Matter of Fitch, 281 App Div 65 [3d Dept 1952]; Matter of Kotcher, NYLJ, Jan. 19, 1970, at 15, col 8 [Sur Ct, Kings County]; Matter of Bradley, 38 Misc 2d 945 [Sur Ct, Broome County 1963].) Although the courts uniformly state that intent controls, where a stock bequest is involved, they differ as to the appropriate principles to apply in ascertaining the testator’s intent. Specifically, the decisions suggest that the courts have been applying ademption or abatement principles or "labels” where in strictness there is no ademption or abatement issue present. (Matter of Security Trust Co., 221 NY 213 [1917]; Matter of Brann, 219 NY 263 [1916]; Matter of Fitch, 281 App Div 65 [3d Dept 1952], supra; Estate of Duffy, NYLJ, July 23, 1985, at 11, cols 5, 6 [Sur Ct, NY County, Lambert, S.]; Matter of Kotcher, supra.) The problem is exacerbated by another general rule that the utilization of ademption principles has nothing to do with intent (see, Matter of Wright, 7 NY2d 365 [1960]), and often works to frustrate the testator’s intent. (Matter of Kotcher, supra; Matter of Bradley, supra; Comment, Ademption in New York: The Identity Doctrine and the Need for Complete Abro *690 gation by Legislation, 25 Syracuse L Rev 978 [1974].) Under ademption principles, the court first defines the bequest as specific or general, and generally, if specific, the bequest is said to have adeemed unless the additional stocks are the result of a mere "change in form” rather than "substance.” (Matter of Brann, supra.) Where stock splits or stock rights are involved, the courts generally hold that if the bequest is specific, there is no ademption since the additional stocks represent a change in form, not substance. (Matter of Howe, 15 AD2d 396 [4th Dept 1962], affd 12 NY2d 870 [1962]; cf., Matter of Fitch, supra; Matter of Kotcher, supra.) Recognizing that ademption principles often produce a result contrary to the testator’s intent, the courts, under the guise of applying these principles, come to result-oriented constructions, based on the testator’s intent, and, in effect, disregard these principles. (Matter of Kotcher, supra.) Therefore, this court would be inclined to peremptorily disregard ademption principles and resolve the instant matter by ascertaining the testatrix’s intent (see, Matter of Kotcher, supra; duPont v duPont, 42 Del Ch 246, 208 A2d 509 [Sup Ct, Del 1965]), if it were not for the fact that the only New York case which has considered the effect of a divestiture on a stock bequest in the context of a will construction proceeding was decided by the Court of Appeals in Matter of Brann (supra), wherein Judge Cardozo resorted to ademption principles where admittedly there was no ademption issue present.
In Matter of Brann (supra, at 265-266) the testatrix bequeathed " 'the 30 shares of stock of the Standard Oil Co. owned by me”, to a brother and upon his death to two charities, with the remainder of the estate to a friend. Three years after execution the brother died and in the same year Standard Oil was judicially compelled to divest itself of its holdings in 39 subsidiary companies. As a consequence of this mandate, Standard Oil opted to distribute its holdings among its stockholders by issuing to them its shares in the subsidiaries. Subsequently, the testatrix executed a codicil wherein she made additional monetary bequests totaling $1,700, but in all other respects, the will was ratified and confirmed.
At the time of her death, the testatrix still owned the original shares in Standard Oil but, in addition, she owned shares in the 39 subsidiaries which had a date of death value exceeding the value of the shares in the parent company. Judge Cardozo conceded that "[i]n strictness” there was no ademption issue since the original 30 shares existed, but *691 determined that the principles of ademption would be "useful” since the "subsidiary shares, while held by the parent company, helped to give the primary shares their value”. (Matter of Brann, supra, at 267.) Under the theory of ademption, only specific bequests adeem, and the test utilized in Brann, the so-called identity doctrine, is whether there is a "substantial identity” between the additional shares and the original shares from which they came. Although a mere change in form rather than substance would not result in ademption, such as where Standard Oil would have reorganized and issued shares in lieu of the original shares, here, the court determined, that to permit these additional shares to pass with the original shares would have constituted a change in substance, so as to result in ademption. (Matter of Brann, supra, at 267.) Judge Cardozo concluded that the additional shares were nothing more than "extraordinary dividends”, independent from the original shares, and therefore pass to the residuary legatees.
Despite Judge Cardozo’s apparent reliance on ademption principles, a careful reading of the decision reveals that the Judge’s conclusion was based on the testatrix’s intent as derived from the provisions of the will and codicil, and the circumstances then known to her, prompted by a desire to avoid an inequitable result. The court deemed significant the fact that the value of the original shares had not drastically declined after the divestiture. Moreover, the court concluded that since the testatrix’s brother had died, she may have "felt that the primary * * * shares would be sufficient for the charities.” (Matter of Brann, 219 NY 263, 269, supra [emphasis added].) Further, the monetary bequests added under the codicil would have failed if the additional shares passed to the original stock legatees. Significantly, since the court deemed the additional shares to be independent from the original shares, the court concluded that the testatrix must also have considered them to be separate from the original shares, and, therefore, the failure of the testatrix to mention the additional shares in the codicil evidenced an intent to exclude the shares from the stock bequests. The effect of the court’s decision was to benefit the testatrix’s friends over two charities.
This court is of the opinion that where there is no ademption issue, as in the instant case, there is no need to rely on the ademption principles referred to in Matter of Brann (supra), where the testator’s intent is manifested by the lan *692 guage of the will itself and the circumstances surrounding the execution of the will and the codicil. (See, Matter of Kotcher, NYLJ, Jan. 19, 1970, at 15, col 8, supra.) Further, upon review of the facts presented, the distinctions with Brann will become evident and significant, rendering Brann inapplicable here. It should be noted that at least one court has expressly determined the Brann "substantial identity” test to be of "doubtful assistance” in resolving a matter almost identical to the instant case. (duPont v duPont, 208 A2d 509, 512, supra.) Additionally, one New York Surrogate has reached a result contrary to Brann. (Matter of Watkins, 51 NYS2d 46 [Sur Ct, Monroe County 1944].)
The court, therefore, must determine the testatrix’s intent from the language of the will and the circumstances surrounding execution of the will and codicil.
Under the terms of her will, the testatrix bequeathed 1,625 shares of AT&T stock "owned by me at the time of my death.” The respondent argues that the above-quoted language somehow should operate as to limit the bequest to only the shares of AT&T stock. The court determines that the only significance to be placed on that language would be in determining whether the bequest was specific or general, were the court to resort to such labels. As stated in Matter of Volckening (75 Misc 2d 221, 224 [Sur Ct, Kings County 1973]), where the court addressed the issue of stock splits in an abatement matter: "The theory is that if the disposition is 'general’, testator is expressing his intention as of the date of death; the disposition therefore carries with it only the number of shares specified in the will. On the other hand, if the disposition is specific, testator is expressing his intention as of the date of execution of the will; it therefore carries with it all stock splits occurring thereafter.” (See also, Matter of Morris, 36 Misc 2d 1094 [Sur Ct, Richmond County 1962] [despite language "at the time of my death,” bequest deemed specific]; Matter of Watkins, supra.) For the aforementioned reasons and, specifically, those stated by Surrogate Sobel in Matter of Kotcher (supra), namely, that these labels are only applicable in ademption cases or where statutorily prescribed, the court holds that this language has no relevance in determining the testatrix’s intent.
Of significance, however, is the fact that the bequeathed: AT&T stock was valued at 57% a share on the date of execution, decreasing to 17% (when issued) on the date of the divestiture, and only 20% on the date of death. This suggests *693 that AT&T’s holdings in the subsidiaries formed an inherent part of the value of the AT&T shares. Further, the stockholders were entitled to the additional shares solely by virtue of their ownership of AT&T stock. The additional shares in the 7 RHCs represented AT&T holdings, and the shares were given to AT&T and distributed by AT&T. (Cf., duPont v duPont, supra, 208 A2d, at 512.)
Additionally, the IRS and the United States Tax Court have ruled that AT&T did not recognize a gain or loss when it acquired the additional shares in the RHCs, nor did the stockholders recognize income, a gain or a loss. (Dunn Trust v Commissioner, 86 TC 745 [1986].) Therefore, at least for tax purposes, the additional shares were not treated as extraordinary dividends. Where additional shares combined with the original shares are deemed to be equivalent in value to the original shares alone, the courts determine that the original stock legatee is entitled to the additional shares. Such is the underlying rationale for holding the stock legatee entitled to the benefit of stock splits. (Matter of Fitch, 281 App Div 65, supra; Matter of Kotcher, supra.)
Under the terms of the will, there are 17 stock legatees who share 1,625 shares of AT&T stock and only 5 residuary legatees, who share 617 shares of AT&T stock. It cannot be convincingly argued that the testatrix intended to give these 5 legatees an additional $115,697 worth of stock where they were to receive significantly less AT&T stock than the preresiduary stock legatees. Further, the residuary legatees share a substantial estate exclusive of the AT&T stock and the shares in the RHCs. The court is not confronted with the situation that existed in Matter of Brann (supra), where there was no residuary estate and therefore no funds from which to pay the monetary bequests, had the court found that the additional shares were not to pass under the residuary clause.
The fact that the testatrix executed a codicil subsequent to the issuance of the additional shares does not dictate a contrary result. The only clear purpose of the codicil was to replace a deceased residuary legatee. The testatrix did not add any additional bequests where as in Brann (supra), the testatrix added bequests which could not have been satisfied unless the additional shares were deemed part of the residuary.
The court, therefore, holds that the testatrix intended the 17 preresiduary legatees of AT&T stock to have a proportionate amount of the shares in the 7 regional holding companies.