In the Matter of the Estate of AUGUSTUS D. JUILLIARD, Deceased.

Surrogate's Court, Orange County, June 28, 1939.

*Morris Permut* [*Stephen P. Nash* and *Raymond M. Tierney* of counsel], for the objectants.

*Larkin, Rathbone & Perry* [*Harold A. Donegan* and *Charles B. McGroddy, Jr.*, of counsel], for the accountants.

*William J. Lamont*, special guardian.

TAYLOR, S. Augustus D. Juilliard died April 25, 1919, leaving a will which disposed of a very substantial estate, and by article thirty-fifth he erected a trust for Elizabeth Stokes Terrien as life beneficiary and the other living children of John S. Rogers and Catherine C. Rogers as remaindermen. A number of accountings have been had and the most recent one was settled by a decree entered on December 23, 1929, that account covering the period from the preceding account to December 31, 1928.

By article thirty-fifth of the decedent's will setting up the Terrien trust five trustees were named, two trust companies and three individuals. One trustee, Chester A. Braman, died November 28, 1928, and that fact occasioned the immediately preceding accounting. The will contained no provision for the appointment of a successor trustee so that after Mr. Braman's death the remaining four trustees carried on, and the accounting now questioned was made necessary by the death of Trustee Frederic A. Juilliard on June 29, 1937.

The account shows the sale of certain securities which was made, according to the testimony, because it was the opinion of the trustees that the estate held too large an amount in that security proportionate to the size of the trust and other classes of securities held, and this sale resulted in a loss.

It is not claimed that this loss was due to any malfeasance or misfeasance on the part of the trustees; on the contrary it has been stipulated in the record that there was no negligence whatever in the management of the trust. There is advanced, however, the rather novel proposition that because of the alleged mental incompetency of Trustee Juilliard, the trustees were prevented from acting in concert and that the carrying out of the judgment of the other trustees in the sale of the securities mentioned was unauthorized, and for that reason, and that reason alone, there must be a surcharge.

The court took some proof upon the question of the mental competency of Trustee Juilliard, and being quite unconvinced of the soundness of the liability theory advanced, requested counsel for the objectants to state for the record the concession that there was no negligence in the handling of the trust and to state the substance of what the objectants would prove by other witnesses, whereupon the court concluded to take the question under advisement and to permit the objectants to offer their proof later if it should be determined as matter of law that there might be a liability on the part of the trustees for the lost money. For the purpose of this decision it is assumed that the objectants would be able to prove the mental incompetency of Mr. Juilliard.

It is well established that unless the will otherwise provides it is necessary for trustees to act unanimously and not by a majority. (*Matter of Johnson*, 123 Misc. 834; *Cooper* v. *Illinois Central R. R. Co.*, 38 App. Div. 22; *Fritz* v. *City Trust Co.*, 72 id. 532; affd., 173 N. Y. 622; *Matter of Ehret*, 70 Misc. 576; *Matter of Dorland*, 100 id. 236; *Matter of Pelgram*, 146 id. 750; *People ex rel. Moscovitz* v. *O'Loughlin*, 79 id. 650.)

It does not appear that the trustees did not act in concert so far as the " physical " carrying out of this trust is concerned; if they failed to act in unison it was only in respect of the forming of judgment, or other mental processes, upon the theory that Trustee Juilliard was incapable of joining with the others in the last mentioned respect. There is no claim that the trustees were prevented from doing some act in the management of this trust which should have been done because of the inability of Trustee Juilliard to join with the others. If the collective judgment that was exercised (whether Trustee Juilliard joined in it or not) was the same as that which would have been reached by a person exercising that degree of care and diligence which the law places upon the normal person, it could not be characterized as negligence, and it would necessarily follow from the rule that there can be no surcharge for failure to exercise that care and diligence if no monetary loss resulted therefrom that there can be no liability here. (*Matter of Adriance*, 145 Misc. 345.) There is no responsibility if there is not both negligence and loss.

An incompetent may, here and there, exercise the same care and diligence in the management of affairs as would be exercised in similar transactions by persons of the most profound sound judgment (See *Matter of Juilliard*, 169 Misc. 270), and it seems just a bit far-fetched to say that fiduciaries should be held responsible for having exercised the same judgment that would be approved in other instances merely because of mental incompetency of one of their number.

One might conceive of the functioning of a trust being completely stayed by the mental or physical incompetency of a co-trustee, and it might well be the duty of the other trustee to seek the removal of the incompetent, but that is not the situation here. (See *Matter of Juilliard*, 169 Misc. 270; *Bascom* v. *Weed*, 53 id. 496.)

Indeed if the incompetency did not go to the extent of paralyzing trust activities, the cotrustee would find himself without power to remove his associate, for in such a situation he would not be a "person interested." (*Matter of Cohen*, 147 Misc. 330; S. C. id. 570.)

Trustees named by a testator should not be removed save for good and sufficient cause, and it would be the duty of a trustee to use estate funds to resist removal of his associate if it appeared to him that such removal proceeding was without just cause. (*Matter of Pelgram*, 146 Misc. 750; *Jessup* v. *Smith*, 223 N. Y. 203.)

For the last-mentioned reason a fiduciary should not be placed in the position of determining in every case at his peril the mental competency of his associate and be surcharged for ordinary and

justifiable losses if it should subsequently be determined that his associate was mentally incompetent.

Fiduciaries are not insurers or guarantors of the funds placed in their hands. (*Matter of Carpenter*, 154 Misc. 143; *Matter of Huscher*, 251 App. Div. 156.) The objection to the loss sustained in this trust will be dismissed.

The other question presented is as to the claim of the remaining trustees to triple commissions, it being alleged that at the time of the death of Trustee Juilliard and at the end of the period covered by the account, the corpus of the estate was $98,150.07. The trust when it was set up was $100,000, and according to the immediately preceding account its value on December 31, 1928, was $103,687.07.

The question hinges upon the interpretation of that part of Surrogate's Court Act (§ 285, subd. 8) which provides that " if the gross value of the principal of the estate or fund accounted for amounts to one hundred thousand dollars or more, each * * * testamentary trustee is entitled to the full compensation on principal and income allowed herein to a sole executor * * * unless there are more than three, in which case the compensation to which three would be entitled must be apportioned among them according to the services rendered by them, respectively." Does this refer to the gross value of the principal at the time of the setting up of the trust, the value as fixed at the close of a preceding account, or the value at the end of the period accounted for?

The " estate or fund " which these trustees, selected by the testator, account for is that set up by the executors pursuant to the terms of the decedent's will and whether or not more than one commission should be allowed ought to be determined by the amount then appearing, even though through the mutations of time the corpus has become larger or smaller. The question might be different as to a successor trustee who would take over and administer only that estate or fund as it was determined to be at the commencement of his trusteeship.

The converse of this question was presented in *Matter of Mohr* (167 Misc. 523), and it was therein held that multiple commissions were not to be allowed because a trust at its inception under $100,000, was by good management and perhaps a fortunate market increased to an amount in excess of $100,000. Many of the arguments advanced in that case are applicable here. It is a poor rule that does not work both ways, it is said.

In *Matter of Burt* (148 Misc. 606) it was said that " the word ' principal ' in the statutory language, ' principal of the estate or

fund accounted for ' means principal which the accountants have received and for which they are legally accountable."

In the examination of older cases (*Matter of Blakeney*, 1 Con. Sur. 128, and the like) it should be kept in mind that the statute has undergone some changes. It formerly provided that multiple commissions would be allowed if the estate or fund after the payment of debts equaled, or was greater than, $100,000; the statute in that form being construed to mean the net estate as determined at the end of the accounting period and after the payment of debts.

It is said that the estate of Trustee Juilliard is not entitled to any commissions at all for the reason that he rendered no services (commissions being compensation for services rendered, *Matter of Taft*, 145 Misc. 435; *Matter of Mathewson*, 8 App. Div. 8), but that question is academic here for there are still three trustees. Whether any part of the commissions should be paid to the estate of the deceased trustee is a matter to be determined among the trustees themselves and does not concern the estate beneficiaries.

By the plain reading of the statute if multiple commissions are allowed at all they are allowed on both principal and income. Further, it appears from article fortieth of the will that the trustees were empowered to render separate annual statements to the several beneficiaries and upon acceptance of such accounts by the several beneficiaries " my said trustees shall be discharged from any further accounting with respect to the income of such trusts." It appears from the stipulation that annual accounts were sent to the life beneficiaries, and, therefore, by force of this will provision they are now estopped from raising any question with respect to the retention of commission upon income.

The other objection having to do with the allowance of commissions is also dismissed.

Decree may be settled on five days' notice, or by consent.