In the Matter of the Accounting of ANNA BEECHER et al., as Executors of EMMA B. MARSHALL, Deceased.

Surrogate's Court, New York County, October 18, 1950.

*James E. Duross* for executors, petitioners.

*White & Case* for American National Red Cross, respondent.

*Kenneth J. Mullane,* special guardian for Elaine Gill and others, infants, respondents.

*Paul Burt,* special guardian for Ronnie Goss, an infant, respondent.

FRANKENTHALER, S. The first question raised by the objections to the executors' account relates to the meaning of the phrase " funeral expenses and other debts " as used by the testatrix. After making bequests of specific assets which constituted a substantial portion of her estate, the testatrix provided in paragraph sixth of her will as follows: " I direct my executors to pay my funeral expenses and other debts out of the moneys which shall be on deposit to my credit in any bank or trust companies at the time of my death, and any sums remaining therefrom I give and bequeath " in fractional shares to named family groups. The funds mentioned therein represented the bulk of her remaining assets and most of the liquid funds in the estate. Other property remaining undisposed of was bequeathed to specified residuary legatees.

The special guardian for the infant legatees of a portion of those cash deposits contends that the word " debts " must be construed as having its ordinary and natural meaning so as to include only those personal obligations incurred by the testatrix during her lifetime (*Wise* v. *Wedlake,* 217 App. Div.

210; *Matter of Littleton,* 129 Misc. 845; *Matter of Eckenroth,* 167 Misc. 632), but not administration expenses or debts of the estate, which, he says, are payable out of residue, as in the ordinary case (*Duck* v. *McGrath,* 160 App. Div. 482, affd. 212 N. Y. 600). It is apparent, however, from a reading of the will that the plan of the testatrix was to make specific gifts of the identifiable assets in her estate in specie and to make all cash payments of administration expenses by the executors a charge against her cash, which, after deduction of such charges, was also given to named legatees.

It appears from schedule E of the account that the personal obligations of the testatrix aggregated approximately $735 in an estate having a gross value of $122,598.92 of which a major portion consisted of the bank deposits in question, indicating that the testatrix, in making a specific provision for the payment of " funeral expenses and other debts " out of those deposits had in mind something more than her own small personal obligations. Moreover, the use of the word " other " shows a connection in the mind of the testatrix between funeral expenses and debts. By connecting grammatically the words " funeral expenses ", which necessarily has a connotation of obligation incurred subsequent to death, with the word " debt ", she thereby imparted to that word a meaning broader than that which the law normally attributes to it. Evidently, in the mind of the testatrix, funeral expenses were included within the class which she described as " debts " and that very inclusion enlarges the meaning of the term " debts " as employed in paragraph sixth of the will. The objection of the special guardian for the infant legatees to the payment of administration expenses solely out of the cash funds is dismissed.

The objection to the failure of the executors to earn at least savings bank interest on the balance of those funds over estimated expenses is sustained. It is not permitted to fiduciaries to retain idle in their hands funds which are not reasonably necessary for payment of charges and yet which will not within a reasonably short time be distributed to those entitled thereto (*Matter of Kruger,* 139 Misc. 907; *Matter of Rathbone,* 78 N. Y. S. 2d 457, and cases cited). The executors are accordingly here charged with a sum equal to interest on $5,000, computed at the rate of 1½% from April 1, 1947, to June 30, 1949, and at the rate of 2% from July 1, 1949, to the date of the decree to be entered hereon.

The credit taken by the executors for the railroad fare of a relative of decedent who accompanied her body to Philadelphia

from California is allowed and objection thereto is dismissed. Decedent, a New York resident, died while on a visit to California. Her remains were transported to the east for the purpose of burial. The expense of accompanying the body to the natural place of burial is properly allowable as a part of reasonable funeral expense (*Hasler* v. *Hasler,* 1 Bradf. 248).

The special guardian for one of the residuary legatees objects to the formula employed in computing commissions. The first part of his objection is to the inclusion of certain mortgages in the computation, which, if excluded, would reduce the estate accounted for below $100,000 and would prevent the executors from claiming multiple commissions. He urges that the mortgages are not includable as they were the subject of specific bequests under the terms of the will. The court holds that such mortgages were properly included in the computations, under the rule stated in *Matter of Grosvenor* (105 Misc. 344, 346–347), where it was said:

" [T]he bequests * * * are rather of the nature of demonstrative legacies than specific legacies, as the executors were directed to perform certain executorial functions in connection with them before the specific articles became the individual property of the legatees. The executors are entitled to commissions upon the value of the property. (*Matter of Fisher,* 93 App. Div. 189.)

" As the executors are entitled to commissions upon the value of the personal property * * * the value of the property should be included in ascertaining the value of the estate for the purpose of determining whether each of the executors is entitled to full commissions." (See, also, *Matter of Berwind,* 181 Misc. 559.)

The second half of his objection relates to further deductions to be made from the gross estate in making the computations. In schedule J of the account no allowance is made for losses incurred on the sale of certain stocks in computing paying commissions. Although such losses are not to be considered in the first instance in estimating the value of the estate accounted for to determine whether multiple commissions are allowable (*Matter of Juilliard,* 171 Misc. 661), they must be deducted in computing the value of the estate upon which paying out commissions are to be allowed. To meet the objections of the special guardian, certain amended schedules in the form of an answer thereto were filed by the executors. Those schedules, while showing a deduction for such losses, fail to reflect other deductions for specific bequests originally shown in schedule J,

aggregating $13,693.69. Although the executors have agreed in that answer to take as commissions a sum less than that which the court finds to be actually allowable under the statute if both sets of deductions are properly made, the executors are directed to file a memorandum computing commissions in accordance herewith.

Objection has also been made to a credit taken for the loss realized by the executors upon the sale of common stocks owned by the testatrix at the time of her death. The court holds that under the circumstances of this case the retention of those securities prior to sale for the period here involved was improper. Accordingly, the account will be surcharged for the sum necessary to reimburse the infant residuary legatee on whose behalf the objection was made for his portion of the loss, amounting to $74.39 (*Matter of Garvin,* 256 N. Y. 518; *Matter of Roche,* 259 N. Y. 458; *Matter of Ellensohn,* 258 App. Div. 891; *Matter of Stumpp,* 153 Misc. 92; *Matter of Hurewitz,* 174 Misc. 182).

The final objection is directed to the amount paid to one of the executors for his services as attorney for the estate. The amount of his compensation is fixed at $4,000, any amount paid in excess thereof to be refunded.

Submit, on notice, decree settling the account accordingly.