John T. Clancy, S.
As an incident to this accounting proceeding, the parties have asked for a construction of paragraph Fourth of decedent’s will.
Paragraph Fourth of the will reads as follows: “ fourth: I give and bequeath to Wilbur A. Dittrich two hundred (200) shares of the common stock of The Brooklyn Union Gas Company, one hundred (100) shares of the capital stock of The Anaconda Company, and one hundred (100) shares of the capital stock of The First National City Bank of New York, to have and to hold the same absolutely and forever. In the event that the said Wilbur A. Dittrich shall have predeceased me, then, and in that event, I give and bequeath said shares of stock to his son Dmid Dittrich, to have and to hold the same absolutely and forever.”
The stocks mentioned in paragraph Fourth had been bequeathed to the decedent by her husband, Percy Dittrich.
Percy was a widower with one son at the time he married the decedent in 1943. It was apparently a very happy marriage, as appears from two letters written by Percy in 1959. One of these letters was addressed to his wife, the other to his son, Wilbur.
Percy had made a will in 1953 leaving his entire estate to his wife, except for a bequest of $500 to his son. In the letters above mentioned, Percy expressed his love for his wife and son. He explained to his son why he was leaving him only $500 and mentioned that he had requested his wife to leave him certain stocks. In his letter to his wife, Percy asked her to leave Wilbur 200 shares of Brooklyn Union Gas, 100 shares of Anaconda Copper and 100 shares of First National City Bank. He then said: “ This is approximately what I had before our investments.”
*784 Percy died on August 1, 1961, leaving a gross-estate of about $136,000. His letters to his wife and son were opened and read by them on August 6, 1961, whereupon his widow wrote at the foot of the letter addressed to Wilbur, the following indorsement: “ I agree to abide by my husband’s [Percy Dittrich] wishes, 100 shs. Anaconda, 200 shs. Brooklyn Union Gras and 100 shs. Nat’l City Bank, Margaret Gr. Dittrich.”
It is not contended that such indorsement constituted an enforcible contract but it is significant that decedent, in paragraph Fourth of her will, attempted to perform her promise.
On September 11, 1961 the decedent executed the will here sought to be construed. On that date, decedent owned no stock of the First National City Bank except what she was inheriting from Percy. None of the assets of Percy’s estate had then been transferred to her but she was aware of the fact that she was entitled to receive all of his securities. Moreover, she and her attorneys knew that there were -sufficient assets to pay all debts, funeral and administration expenses without resort to the afore-mentioned securities. Decedent did not qualify as executrix of Percy’s estate until September 28, 1961 which was after the date of her own will.
Both parties contend that the legacy in paragraph Fourth of decedent’s will is a specific legacy. In this, they are correct. (Matter of Hicks, 272 App. Div. 594, 597, affd. 297 N. Y. 924; Matter of Howe, 15 A D 2d 396, affd. 12 N Y 2d 870; Matter of Griffing, 11 A D 2d 709, affd. 9 N Y 2d 919.)
At this point, the parties disagree, each contending for different results flowing from the specific legacy. The executor contends that the legacy of the First National City Bank stock was adeemed on the ground that the decedent did not own any such stock at the time of her death. It is conceded that Percy owned such stock and bequeathed it to the decedent.' It is further conceded that the stock is still registered in Percy’s name and that decedent had title to it as executrix of Percy’s will but that she had not yet had it transferred to her own name individually. The decedent died on September 15, 1962, a little more than, a year after Percy.
Ademption has been defined as “ The extinction or withholding of a legacy in consequence of some act of the testator which, though not directly a revocation of the bequest, is considered in law as equivalent thereto, or indicative of an intention -to revoke. ’ ’
“ The ademption of a specific legacy is effected by the extinction of the thing or fund * * * without regard to the *785 testator’s intention” (Bouvier’s Law Dictionary-Baldwin’s Student ed., 1946.)
Our Court of Appeals has held that intention has nothing to do with the matter and that a bequest fails ‘ ‘ if the article specifically bequeathed has been given away, lost or destroyed during the testator’s lifetime.” (Matter of Wright, 7 N Y 2d 365, 367.) The court went on to say (pp. 368-369): “ What is significant, therefore, is the fact that the precise thing given by the will is not available for disposition at the time of the testator ’s death, and it matters not whether this came to pass because of an intentional and voluntary act on the part of the testator, such as abandonment, sale or gift, or because of an occurrence, involuntary and unintended, such as condemnation, fire or theft. ’ ’
It will be noted, however, that one of the pertinent characteristics of ademption is that it generally applies to property once owned by the testator and whose title was subsequently extinguished. In the instant case, decedent’s title had not been extinguished; it merely had not yet been perfected by transfer to her own name. Having equitable title, she could bequeath the stocks. (Matter of Charles, 3 A D 2d 119,125.)
To suggest that decedent purposely refrained from having the stock transferred to her own name in order to create an ademption would be to make a mockery of her will and to impute to her an intention which does not seem compatible with her actions.
The court finds that there was no ademption of the stocks bequeathed to Wilbur in paragraph Fourth of decedent’s will. {Matter of Martin, 252 N. Y. 582.)
The parties further disagree as to the effect of certain stock splits. At the time Percy made his will, he owned 300 shares of Brooklyn Union Gas Company. Between the date of his will (1953) and the date of the letters he wrote to his wife and son (1959), that stock had been split two for one. He thus owned 600 shares of Brooklyn Union Gas Company in 1959 when he wrote the letter to his wife asking her to leave 200 shares to his son. Because of his additional statement, ‘ ‘ This is approximately what I had before our investments ”, Wilbur’s attorney claims that Percy intended Wilbur to have 400 shares. That intention is not apparent. He said “ 200 shares ” and the decedent after his death indorsed his letter to his son 11 200 shs. Brooklyn Union Gas In her will decedent bequeathed' 200 shares and the court finds that Wilbur is entitled to 200 shares of Brooklyn Union Gas.
*786 Wilbur is entitled to stock splits after September 11, 1961, the date of decedent’s will, and to stock dividends after September 15, 1962, the date of decedent’s death. He is also entitled to cash dividends after the date of decedent’s death.