S. Samuel Di Falco, S.
This is an accounting by one of four executors. The other three executors are, respectively, the widow, the son, and the daughter of the decedent. Although the account covers a period of nearly nine years, the data is set out very briefly. For example, the income is stated in terms of the total for each security over all the years, except that income from Yonkers Motors Corp. is stated in terms of the total for each year. The widow and the two children are the only beneficiaries of the estate, as well as fiduciaries, and no accounting at all would be required except for a dispute between the petitioner and the respondents over his commissions. The respondents waived commissions. Therefore, the sole issue raised by the objections to the account relates to the commissions claimed by the accounting party.
The principal objection is to commissions on the shares of stock of Yonkers Motors Corp. The decedent was the active head and principal owner of this enterprise. His son-in-law was engaged in the business and had acquired some of the shares of stock by gift from the decedent. The decedent owned the balance of the shares. In the second article of his will he said: “It is my intention by the terms of this Article to give and bequeath to my children Rodney Roth and Joy Libert such of the shares of corporate stock of Yonkers Motors Corp. as may be owned by my estate after the payment of the obligations of my estate, including administration expenses and taxes of every kind and description. It is contemplated by me that my estate will sell to Yonkers Motors Corp. or others such of the .shares of the corporate stock of Yonkers Motors Corp. as the estate will be required to sell in order to realize cash sufficient to pay the obligations of my estate, including taxes of every nature and description, including but not limited to estate and inheritance taxes. I hereby direct that, thereafter, the shares of corporate stock of Yonkers Motors Corp. remaining in my estate shall be distributed as follows: (a) If my daughter Joy Libert be living, I give to my son-in-law Harold Libert sufficient of the shares to bring his total stockholdings in Yonkers Motors Corp. to 25%, including any corporate stock transferred to him by me during my lifetime, (b) To my daughter Joy Libert sufficient of the shares to bring the total stockholding in Yonkers Motors Corp. of my said daughter and her husband Harold Libert, including any corporate stock transferred to either of them by me during my lifetime, to sixty (60%) percent of the then issued and outstanding corporate stock, (c) The balance of the corporate stock of Yonkers Motors Corp. to my son Rodney.” Any shares transferred during the decedent’s *1068 lifetime to any of the three named persons were to be deemed still the property of the transferee for the purpose of calculating these percentages, even if such shares had been sold or alienated.
None of the shares of Yonkers Motors had to be sold during the estate administration. Instead, the sum of $110,000 was transferred to the estate by Yonkers Motors Corp. The treatment of this payment is also the subject of dispute between the parties in respect of commissions. In any event, 308 shares of stock were registered in the name of the decedent, and the son-in-law already owned stock representing 25% of the outstanding shares so that no further shares were distributable to him. The original stock certificate was lost. Finally 144 shares were issued to the daughter and 164 shares to the son. It is undisputed that this division satisfied all of the terms and conditions of the will. The 308 shares of stock owned by the decedent are listed in the account as having a value of $523,-600. The accounting executor claims commissions for receiving and paying out the shares at this valuation. The objectants contend that he is not entitled to any commission at all upon these shares.
The arguments of the respective parties indicate that it may be useful to recall some fundamental principles governing the computation and allowance of commissions. The commissions of an executor represent the full compensation to which he is entitled for all services rendered by him in the adminisstation of the estate. He is compensated not only for the actual services that he is required to render, but also for the responsibility which he assumed, being charged with the value of all property collectible by him. In some jurisdictions the court is required to fix the reasonable value of the fiduciary’s services by recourse to such standards and guides as it deems just. In this State the Legislature has set a fixed schedule of rates for all cases. (See Matter of Schinasi, 277 N. Y. 252, 258-259.) Such an inflexible standard has certain advantages, as the court pointed out in Matter of Schinasi (supra), but its very inflexibility may prevent doing full justice in a particular case. As the court said in Collier v. Munn (41 N. Y. 143, 147): “ Sometimes it would, doubtless, be quite inadequate to compensate for the labor, care, and pains bestowed. Sometimes the compensation would be liberal. But the point of importance was to make the amount in each case definite, so that there should be no possible temptation of pecuniary interest to influence the conduct, or mislead the discretion of the executor or other trustee in similar relations. ’ ’
*1069 Although the statute, strictly construed, would seem to permit compensation only upon property which was fully administered (i.e., received and paid out), from the very beginning there grew up the practice of the court’s allowing one half the commission when the property was received and accounted for, even if some of it had not then been paid out. (Rowland v. Morgan, 3 Dem. 289, 291.) Thus the commissions were divided into two parts, one of which was based upon the value of property received and the other, upon property paid out. However, it is important to bear in mind that the statutory schedule of rates is only an effort to measure the reasonable value of all services. The commissions represent compensation for the entire administration, not merely the first act (receiving) and the last act (paying out). The division of the commission into two parts is merely a convenient way of providing payment. (Collier v. Munn, 41 N. Y. 143, 147, supra; Civiletti v. Commissioner of Internal Revenue, 152 F. 2d 332; Smart v. Commissioner of Internal Revenue, 152 F. 2d 333; Matter of Ellmers, 180 Misc. 835, 837.) Hence an executor does not entitle himself to commissions merely by the act of taking possession of property and delivering it to a legatee.
With respect to commissions on property that is the subject matter of a specific legacy, the statute is now explicit. The new text, however, was not added until the 1914 revision. The rates of compensation were originally, and still are, based upon ‘ ‘ sums of money ’ ’ received and paid out, and strictly construed, the statute would not permit the computation of commissions on other species of property until such property was turned into money. However, the courts treated property which was distributed in kind as if it were money received and paid out. “ This was itself an extension of the authority of the statute, justified by the consideration that what was accepted as money by the parties interested might well be treated as such for purposes of compensation.” (Phoenix v. Livingston, 101 N. Y. 451, 456; Matter of Smith Co., 31 App. Div. 39, 40A1; Matter of Ross, 33 Misc. 163, 164.) From the beginning, hoAvever, the courts drew a distinction between property that was distributed in kind to a general legatee or a residuary legatee and property that passed to a specific legatee. The subject matter of a specific legacy Avas held to be necessarily excluded from the commission base. (Hall v. Tryon, 1 Dem. 296; Schench v. Dart, 22 N. Y. 420, 424; Jessup’s Surrogate Practice, 1899, p. 1322.) The reason given for excluding specific legacies Avas that the executor had no responsibility or duties connected Avith it except to deliver it to the legatee if *1070 it was in his possession. (Jessup’s Surrogate Practice, supra; Hall v. Tryon, supra; Matter of Moffat, 24 Hun 325, 327.)
The Revisers in 1914 recommended a codification of the decisional rule, by adding a provision that the value of any real or personal property “ distributed without sale, at the election of a devisee, legatee or distributee, or pursuant to a consent filed, shall be considered as money in making computation of commissions. But this shall not apply in case of a specific legacy or devise.” (Report of the Commission to Revise the Practice and Procedure in Surrogates’ Court, 1914, Code Civ. Pro., § 2753 [N. Y. Sen. Doc., 1914, p. 283].) However, the text as added by the Legislature was .slightly different, viz., “ the value of any real or personal property distributed or delivered, shall be considered as money ”. It retained the exclusion of a specific legacy. (L. 1914, ch. 443, § 2753.) Subsequently the text was further amended to include the receipt of the property, as well as the distribution, and also the increment thereof (L. 1916, ch. 596) and to give the court authority to fix the value of the property (L. 1919, ch. 279). The statute remains virtually unchanged since that time (Surrogate’s Ct. Act, § 285, subd. 2).
There can be no doubt that an executor’s responsibility, duty and services in respect of a specific legacy differ greatly from his responsibility, duty and services in respect of other property. He is under no obligation to exercise diligence and prudence in deciding whether to retain the property or to dispose of it, to make any decision respecting its quality as an investment, or even to take steps to collect it or take it into his possession. “ As to chattels and choses in action specifically bequeathed, an executor has but a qualified title, the right to apply them in discharge of debts after first exhausting all other property applicable to that purpose. If he assents to their delivery to the legatees they acquire a perfect legal title to the article or demand, and in case the remaining property of the testator is insufficient to pay his debts the recipients of the specific legacies are liable under the statute to pay the amount or value of the legacies received by them.” (Blood v. Kane, 130 N. Y. 514, 517.) The executor “ is not obliged to take possession of property specifically bequeathed or to bring it to or to collect it at the domicile of the testator, unless it is needed in the administration of the estate, and * * * therefore, unless the executor takes possession of it the legatee, in whom the title is vested, must care for it at his peril, and must take it as and where it is.” (Matter of Columbia Trust Co., 186 App Div. 377, 381.)
*1071 In some cases the courts have permitted commissions to he computed upon property which, under general principles of law, would appear to be the subject matter of specific legacies. (Matter of Fisher, 93 App. Div. 186, 189; Matter of Berwind, 181 Misc. 559, 565; Matter of Brooks, 119 Misc. 738, affd. 212 App. Div. 868; Matter of Grosvenor, 105 Misc. 344; Matter of Marshall, 199 Misc. 431, 434; Matter of Mattes, 12 Misc 2d 502; Matter of Kuker, 22 Misc 2d 63.) In all of these cases the court found that the will placed responsibility upon the executor for taking, holding, dividing and distributing the property. As this court remarked in Matter of Kuker (supra), the commission statute must be read fairly and reasonably and with an eye to its purpose and scope and hence the test in all cases like this “ seems to be whether or not the will requires the executor to perform regular executorial duties with respect to the property.” (p. 65.)
Turning to the case now before the court, the fact is that the executors never did have actual possession of the stock certificates of Yonkers Motors, and they never took any steps to have the shares registered in the names of the executors. Harold Libert testified that in the wall safe which the widow of the testator had at her home he saw a certificate for 308 shares, registered in the name of the decedent. At some point of time the original certificate was lost. A new certificate was never issued to the executors. Nothing was done until ultimately the corporation issued new certificates to the daughter and to the son of the testator in the proportions stated in the will. The certificate, of course, is merely evidence of ownership and the fact that they did not register the shares as executors is not, in and of itself, decisive. We must look also at their other acts of omissions.
Insofar as the will referred to Harold Libert, the satisfaction of his interest would require only a simple mathematical computation on the date of the decedent’s death. He was to receive a sufficient number of shares to bring his total holdings to 25% of the outstanding shares, but he already held 25% of the shares and thus had no further rights under the will. Under the terms of the will, the executors would have been justified in holding the shares of Yonkers Motors Corp. until they were satisfied that all of the obligations charged against it could be satisfied. The fact is that Yonkers Motors paid to the estate the sum of $110,000 shortly after the decedent’s death, and none of these shares had to be liquidated. This large sum evidently came to the corporation through a policy of insurance on the life of *1072 the decedent on which the snm of $100,000 was collected within 60 days of his death. The corporation apparently paid the sum of $110,000 to the executors shortly thereafter. This sum, together with income collected by the executors, appears to have been sufficient to satisfy all debts, expenses and charges. The distribution of the shares of Yonkers Motors between the son and the daughter required only a simple mathematical calculation, and required of the executors no different service than in the ordinary case where a testator who holds a single stock certificate specifically bequeaths shares to two or more persons. Indeed, in this case the distribution was made on an arithmetical calculation by the corporation in which the executors were not required to take any part except to assent to the take-over by the legatee.
It Avas clearly the intent of the testator to vest his children with all of the shares of the family corporation except such as would have to be disposed of in order to acquire cash for debts and expenses. The executors had no authority to sell the stock or to dispose of it except to the limited extent stated. The limited authority Avhich they had in this case is precisely the same as the authority which every executor has in every estate, namely, to hold all assets until he is sure that the estate is solvent, and if necessary to sell so much of the property specifically bequeathed as is necessary to pay debts, taxes and expenses. (Blood v. Kane, 130 N. Y. 514, supra; Surrogate’s Ct. Act, §§ 218, 214.) If any shares were sold, the executors Avould, of course, be entitled to commissions on the money received and paid out. Because of the close relationship between the executors and the corporation and the readiness of the family to do whatever was required, the payment of debts and expenses could be amicably arranged without complications. Thus the executors had no real duties with respect to the corporation or the shares of stock except to channel to the estate enough money to satisfy the estate obligations." On all money so diverted to the estate there can be no doubt of the right to commissions.
The legacies in article second of the will to the .son and daughter are specific legacies. The executors did not have such authority, duty or responsibility with respect to these shares of stock to justify the award of commissions to the accounting party on such shares of stock, and the court holds that the accounting executor is not entitled to base his commissions upon the full value of the stock.
With respect to the sum of $110,000 paid to the executors, it is clear that this sum was delivered to them in order to avoid *1073 the necessity of sacrificing shares of stock. This sum was paid to them as reasonably necessary to satisfy debts, expenses and taxes. The account shows that this sum was actually needed to satisfy debts and expenses. The court, therefore, holds that the accounting executor was required to receive, administer and distribute this sum and is entitled to commissions thereon.
It matters not how the advancing of the money is characterized either by the executor or the corporation. It was advanced for the purpose of paying estate obligations and coneededly there is no obligation on the part of the estate to return it. Hence it is money that was received, administered and paid out.
There is also objection to commissions on income on the ground that the accounting executor unreasonably and unduly delayed the administration of the estate. Letters testamentary were issued on June 7, 1957 and the administration of the estate was continued until October, 1963, when the last shares of stock were transferred to the widow as residuary legatee. The account shows that there were large income tax deficiencies which were not finally paid until late in 1960.
It is argued that one reason why the income had to be paid to the estate was that an election was made under section 1372 of the Internal Revenue Code for treating the corporation for tax purposes as a partnership, an election which is referred to by the parties as a subchapter S election. However, this does not seem to the court to be a sufficient reason for receiving the income in the estate rather than permitting it to be paid directly to the beneficiaries. However, the accounting executor is correct when he says that the receipt of the income by the executor provided a means for satisfying the estate obligations without diminishing the legacies to the two children. This procedure appears to have been adopted by consent of all of the parties, or at least without any dissent. Inasmuch as Mr. Libert was the president and in control of the corporation and conducted affairs in harmony with his wife and all of the members of her family, it would appear that this course of conduct was satisfactory to all concerned. The account shows that it actually was necessary to have funds in addition to the $110,000 which was originally advanced. The income paid by the corporation to the executors is only slightly more than the total of the administration expenses (Schedule C) and the debts (Schedule E). The court, therefore, holds that the income from the corporation was necessarily received and paid out by the executors and was necessary for the completion of the estate administration.
*1074 The property which was bequeathed to the widow under the terms of the will could have been distributed to her earlier than the actual distribution date. In view of all of the circumstances, however, and in view of the fact that no demand was made for earlier distribution, the executor is entitled to commissions on the income received from these investments. The widow and the two children could have made distribution at any time they elected. An excess of caution may have prompted the withholding of distribution, but none of the executors took any steps to compel an earlier distribution. The court, therefore, holds that the accounting executor is entitled to commissions on the income received by the executors.
Three of the four executors have waived commissions. Their purpose in waiving commissions was to benefit the estate and not the fourth executor. The statute (Surrogate’s Ct. Act, § 285, subd. 5) provides that where there are more than three executors “ the compensation to which three would be entitled must be apportioned among them according to the services rendered by them, respectively.” The accounting executor claims that he performed substantially all of the active services and that he should receive a full commission. The accounting executor is a certified public accountant. He had been the accountant for the corporation from the time that the decedent started the business until sometime in January, 1963, when his services were terminated because of a dispute over fees. Under the circumstances it would not be unusual to expect that he would assume performance of those services in which his professional skills were of particular value. He kept the estate cheek book, which appears to contain the estate’s financial records but there are so few entries over the long period of time that this work was not of great significance. The accounting executor also contends that his services were of particular value in the various tax matters in which the estate was involved. However, it is undisputed that the accounting executor received the sum of $30,000 as an award by arbitrators who were chosen to determine the value of services rendered by him to the corporation, to the individuals and to the estate. Among these services for which he was compensated were his services in connection with the tax liability of the decedent, accounting- and income tax returns for the estate and estate taxes and “ Matters in conjunction with attorney for the estate.” It thus appears that the accounting party has been paid the reasonable value of his services as accountant and tax adviser. The usual rule is that all of the executors assume the responsibility and liability *1075 and all are entitled to share in the commissions except where it appears that the services of one are such as to entitle him to greater compensation than the others for his extra services. The accounting party has been compensated for extra services. Indeed, some of the matters for which he has been compensated appear to be those which he was required to render as executor. Under all of the circumstances the court holds that the accounting executor is entitled to three fourths of a full commission.
The court, therefore, rules that, in the computation of the receiving commissions, the following property shall be included: All of the property set forth in Schedule A except the .shares of stock of Yonkers Motors Corp; all of the property set forth in Schedule A-l; all of the property set forth in Schedule A-2. In the computation of paying commissions there shall be included the property shown to have been paid out in Schedules C and E, the cash on hand as shown in Schedule G- and the property distributed as shown in Schedule F, except for the shares of Yonkers Motors Corp. which shall be excluded. The accounting party is entitled to three fourths of one full commission.
The parties have stipulated that the court fix the compensation of the attorneys for the accounting party on affidavits to be submitted by the attorneys and the objectants. The parties are directed to file such affidavits and the court will determine the compensation at the time of the settlement of the decree.