Otto C. Jaeger, S.
In this executors’ accounting proceeding, the schedules filed by the executors indicate that they have charged the personal estate of decedent, including the asserted specific legacies contained in article Fourth of the will, with the payment of debts and administration expenses, including funeral expenses, and have exonerated the residuary real property from liability for the same. The main objection of the guardian ad litem and the objections of one of the daughters of decedent, individually and as an executrix of decedent’s spouse, are directed at this method of marshalling the assets. Additional objections of the guardian ad litem will also be considered, together with the request of the executors to construe and clarify a devise of real property.
Decedent died August 28, 1964 leaving a will admitted to probate on October 23, 1964. Prior to the change effected by EPTL 13-1.3 with respect to property chargeable with the payment of estate obligations, the law relating to the marshal-ling of assets (and which was in effect at the date of decedent’s death) provided that in the absence of express testamentary direction to the contrary or if such be the clear intent of the testator to be gathered from the provisions of the will, the personal estate must first be exhausted before invading the real property. The personal estate abated in the following order: (a) the personal estate not bequeathed; (b) the personal estate generally bequeathed, and (c) the personal estate specifically bequeathed. Thereafter the real estate would be invaded in the following order: (a) the property which descended to the heirs at law; (b) the property which was generally devised, *891 and (c) the property which was specifically devised. (Duck v. McGrath, 160 App. Div. 482, affd. 212 N. Y. 600; Matter of Manley, 1 Misc 2d 61; Matter of Paterski, 50 Misc 2d 24.)
The account as filed indicates that the executors charged themselves with the receipt of personal property totaling $194,499.70 of which $193,095.55 was stated to be a specific bequest to the wife of decedent under article Fourth of the will. For information purposes, the executors also listed six parcels of real estate owned by the decedent, three of which were specifically devised and the remaining three of which, valued at $277,000, were part of the residuary estate. The various schedules also listed debts, funeral and administration expenses totaling $139,467.25. Obviously, the executors were faced with the problem of marshalling the proper assets to pay the estate liabilities. This in turn required a determination as to whether the wife’s legacy in article Fourth of the will was in fact a specific legacy chargeable with the payment of estate obligations or was intended by the testator to be exonerated from such obligations.
There is no express testamentary direction either to charge the realty with debts and expenses or to exonerate the personalty therefrom. Thus, the question of whether the wife’s legacy under article Fourth is general or specific, is of paramount importance, since if it is general, application of section 47-d of the Decedent Estate Law (now EPTL 13-1.3) would mandate the payment thereof out of the real property not specifically devised. On the other hand, if her legacy is found to be specific, a further question must be answered as to whether the will discloses an intent to exonerate it from the payment of estate obligations.
It is admitted that the four small monetary legacies (aggregating $4,000) in article Third of the will are general legacies. There is disagreement, however, as to whether article Fourth which reads as follows, creates a general or specific legacy: 11 Fourth: I give, devise and bequeath to my beloved wife, Louise Cannavo, any and all bonds, notes and mortgages which I may own at the time of my death, together with any interest accrued thereon.”
The rule used to determine if a legacy is general, specific or demonstrative was expounded in Crawford v. McCarthy (159 N. Y. 514, 518-519) as follows: “ A general legacy is a gift of personal property by a last will and testament, not amounting to a bequest of a particular thing or money, or of a particular fund designated from all others of the same kind. A specific *892 legacy is a bequest of a specific part of a testator’s personal estate distinguished from all others of the same kind. A demonstrative legacy is a bequest of a certain sum of money, stock or the like, payable out of a particular fund or security.” Characteristics of a specific legacy were also set forth in Matter of Strasenburgh (136 Misc. 91, 93): “ a legacy is properly called specific if it give, without any implied equivalent, a certain thing, particularly described and distinguished from all others of the same kind belonging to the testator, usually at the time of the making of the will or in some cases at the date of his death, as where he specifies a particular thing ‘ of which I may die possessed.’ ”
The words used by the testator in article Fourth giving his wife ‘ ‘ any and all bonds, notes and mortgages which I may own at the time of my death ”, sufficiently set apart such particular things or such a definite part of his entire estate, as to make this legacy a specific bequest.
While the court finds that the legacy in article Fourth is specific, it does not necessarily follow that the personal property which is embraced with this legacy must be used to pay the debts and expenses of the estate. The intent of the testator as ascertainable from the will must be considered. Matter of Thall (18 N Y 2d 186, 192) states: “The first rule of testamentary construction, of course, is that a will be interpreted to reflect the actual intention of the testator and the second that this intention be ascertained from a reading of the document as a whole. (See, e.g., Matter of Dammann, 12 N Y 2d 500, 504-505; Matter of Larkin, 9 N Y 2d 88, 91; Matter of Fabbri, 2 N Y 2d 236, 240; Williams v. Jones, 166 N. Y. 522, 532-533.) If a 1 general scheme ’ be found, it is the duty of the courts to carry out the testator’s purpose, notwithstanding that ‘ general rules of interpretation ’ might point to a different result. (Williams v. Jones, 166 N. Y. 522, 533, supra.) ”
There appear to be ample indicia here that testator intended to exonerate the specific legacy from his debts and administration expenses and to charge them to his “general” estate — ■ meaning his assets other than those specifically bequeathed or devised. The very first article of the will directs the executors to pay out of the ‘ ‘ general estate, as an expense of administration, all taxes ”. (Emphasis supplied.) This was a recognition by testator that expenses of administration were payable from the “ general ” estate —necessarily exonerating the wife’s specific legacy from their payment.
. In article Second of the will, testator specifically bequeaths “jewelry, clothing and other personal effects, automobile, *893 silverware, pictures, works of art and other household furniture and furnishings ” to his wife, and then, by separate article Fifth he specifically devises his residence to her. It is inconceivable that testator intended that specifically bequeathed items of such a nature, should be used to satisfy his debts and administration expenses when undevised realty was available. It is far more logical to believe that, having provided his wife with a home and its furnishings, exempt from all taxes, he then provided further for her welfare by the article Fourth bequest of specific bonds, notes and mortgages. Moreover, the liberal provisions for his wife as the primary object of his beneficence by the specific legacies and devise stand in contrast to the later bequest to her of only 20% of the residuary. Being aware as he must have been of his substantial debts, and wishing evidently to provide amply for his wife, he surely would have given her a much larger share of his residuary estate if he had had any inkling that the specific legacies to her would be applied to debts before undevised realty was so applied.
Accordingly, the court determines that decedent intended to exonerate his specific bequests from the payment of his debts and administration expenses and that his real property not specifically devised is chargeable with the payment thereof.
It appears that all the adult parties entered into an agreement with the executors on March 30, 1966 wherein, among other things, permission was given to sell the two mortgages (which were part of the specific bequest in article Fourth) at a discount to raise immediate cash to pay taxes, debts and administration expenses. It was further agreed that at the time of judicial settlement of the estate, proper credit for the proceeds of the mortgages would be given to decedent’s wife. These provisions of the agreement are now attacked as having no effect because, allegedly, they were agreed to under mistake by one of the parties. The court finds it unnecessary to consider said party’s contention since the conclusion reached herein, independent of said provisions of the agreement, accomplishes substantially the same result as said provisions, namely, that the mortgages were part of a specific bequest to the wife, that they are not chargeable with decedent’s debts or administration expenses, and that the proceeds of the mortgages are to be credited to the wife.
The note receivable, listed in Schedule A of the account, is also part.of the wife’s specific legacy under article Fourth and the executors shall give credit for the amount collected thereon to the estate of the now deceased wife.
*894 Since the filing of amended schedules, the guardian ad litem withdrew most of his objections. Among the objections not withdrawn was one directed against the payment of the loan made by Boyal National Bank of New York to decedent. The loan was paid from the proceeds of the sale of the two mortgages securing the loan. This objection is overruled. There is no express direction in the will to pay the secured loan from the general estate nor can the same be implied. It follows, therefore, that the loan was lawfully paid with part of the proceeds of the sale of the mortgages securing the loan (Decedent Estate Law, § 20, now EPTL 3-3.6). Furthermore, while executors’ commissions are not ordinarily paid on property specifically bequeathed or devised (SCPA 2307), here the executors were required to sell the mortgages and perform executorial duties with respect thereto. They will be allowed commissions on so much of the proceeds of the mortgages as exceeds the amount required to satisfy the bank’s loan (Matter of Kuker, 22 Misc 2d 63).
With respect to the rental security deposits of various tenants of the property owned by decedent, the executors shall transfer to each specific devisee of real property the respective security deposits applicable to such devisee’s property.
Sufficient proof having been submitted, the claims of Angelo Cannavo, one of the executors, are allowed as follows: $7,800 for money loaned to decedent during his lifetime; $5,803.46 for work, labor, material and services performed with respect to 912 Soundview Avenue, Bronx, N. Y. and chargeable to that property; $2,310.35 for work, labor, material and services with respect to 975 Close Avenue, Bronx, N. Y. and chargeable to that property; $275.59 for payment of gas and electric on property 912 Soundview Avenue, Bronx, N. Y. and chargeable to that property.
The claim of the firm of attorneys, one of whose members is a fiduciary, for legal services rendered to the decedent prior to his death, is allowed in the amount claimed.
Article Seventh of the will specifically devises property described as Lots Nos. 1 and 59 on the Tax Map of the Borough of The Bronx. All parties agree that the block number, namely Block 3662 was inadvertently omitted from the will description. Accordingly, the court finds that the subject of this specific devise is Lots Nos. 1 and 59 in Block 3662 on the Tax Map of the City of New York, Borough of The Bronx.