Nathan B. Sobei,, S.
The three executors are in disagreement in computing their commissions in this account. They request a determination by the court whether certain dispositions are specific or general.
The disagreement no doubt results from an earlier decision by this court in this same estate (Matter of Volckening, 70 Misc 2d 129). There, however,- the issue was “ abatement ” not “ commissions ”. This court decided that abatement was not necessary; that the “abatement” statute (EPTL 13-1.3) did not apply when estate assets were insufficient to pay estate taxes. As a result of that decision, the statute was amended to clarify its provisions with respect to such estate taxes (L. 1973, ch. 663). This court however added in dicta (p. 132) that even if abate-" ment was required — -“All dispositions in Mrs. Volckening’s will are general. There are no specific dispositions as all parties assume.”
Although rarely articulated in the decisions, a disposition can he “general” for one purpose, yet “specific” for another. (See, e.g., Matter of Fitch, 281 App. Div. 65, 67; Matter of Smallman, 138 Misc. 889; Matter of Kuker, 22 Misc 2d 63.) That this principle is not understood is not surprising: the decisions are often confusing.
As defined, a “ specific disposition is a disposition of a specified or identified item of testator’s property” (EPTL 1-2.16). *223 Whether a disposition is specific or general may require determination in many contexts. The areas most frequently encountered are:
(1) The order of “ abatement ” of dispositions.
(2) The treatment of “ stock splits ” occurring between execution of the will and death of testator.
(3) “ Ademption ” of dispositions.
(4) “Commissions”: — by statute (SOPA 2307, subd. 2) specific dispositions are not eommissionable.
In each of these contexts, the decisions discuss the traditional indicia of specific dispositions (e.g. ‘1 my ” or “ all ” stock or other property; the “remainder of” described property; inclusion of the disposition in the same dispositive paragraph with other specific dispositions; direction that the disposition be free of taxes; disposition of stock in family corporation as distinguished from public corporations, etc.). The decisions focus on the presence or absence of these traditional indicia as if these were solely determinative of the issue before the court. As will be discussed these are helpful in some areas but not at all relevant in others.
I
An “ abatement ” of dispositions becomes necessary when the residuary estate is insufficient to pay debts, funeral and administration expenses and in consequence insufficient to pay preresiduary dispositions in full. In such circumstances, a statute (EPTL 13-1.3) requires that “general” dispositions abate before “ specific ” dispositions. The same statute (subd. [d]) provides that the statutory order of abatement shall apply only in the absence of an “ express or implied intentior 5 5 to prefer proportionate abatement. Since equality in abatement is generally preferred by most testators and inequality is the exception (Matter of Neil, 238 N. Y. 138; Matter of Cameron, 278 N. Y. 352, 358; 2 Davids, New York Law of Wills, § 1073) it is often unnecessary to resort to the traditional indicia at all. Yet the courts struggle with the traditional indicia in order to avoid plainly unintended inequity to preferred objects of testator’s bounty. (Davis v. Crandall, 101 N. Y. 311; Matter of Smallman, 138 Misc. 889, supra; Matter of Brewster, 144 Misc. 888; Matter of Haslett, 190 Misc. 496; Matter of Paterski, 50 Misc 2d 24; Matter of Cannavo, 59 Misc 2d 889; Matter of St. George, 61 Misc 2d 749.) Since “ intention ” is often made manifest by the dispositions in the will, the presence or absence of the traditional indicia will have little to do with the decision.
*224 The prior decision in this case is illustrative. Mrs. Volckening created three trusts, one for each of her daughters. The first was funded with general assets, the other two by stock of a family corporation. During her lifetime when the stock of the fam-. ily corporation increased in value, she added $100,000 to the corpus of the first trust. Even without this manifestation of her intention, it was evident from the contents of her will, that Mrs. Volckening desired equality in each trust and therefore equality in and not disproportionate abatement. Although all the traditional indicia of ‘ ‘ specific ’ ’ dispositions were present in the dispositions creating the two trusts funded by shares of the family corporation, this court held that for the purpose of abatement the dispositions were to be treated as “ general ”.
Since the order of abatement turns primarily on testator’s intention, resort to the traditional indicia to determine whether a disposition is general or specific is most often unnecessary.
II
Testamentary intention also determines whether a disposition of shares of stock entitles the legatee to stock splits occurring between the date of execution of the will and date of death. (Matter of Security Trust Co. of Rochester, 221 N. Y. 213; Matter of Martin, 252 N. Y. 582; Matter of Rollins, 271 App. Div. 982; Matter of Hicks, 272 App. Div. 594, affd. 297 N. Y. 924; Matter of Griffing, 11 A D 2d 709, affd. 9 N Y 2d 919; Matter of Howe, 15 A D 2d 396, affd. 12 N Y 2d 870; Matter of Mitchell, 114 Misc. 370; Matter of Lamborn, 171 Misc. 734; Matter of Davis, 184 Misc. 952; Matter of Jaynes, 3 Misc 2d 118; Matter of Brown, 26 Misc 2d 1011; Matter of Roob, 59 Misc 2d 619.)
The cited decisions hold that if the disposition is “ specific ” the legatee is entitled to the additional shares resulting from the stock split; if the disposition is ‘ ‘ general ” he is not. The older cases articulate the reason for that rule. The theory is that if the disposition is “ general’’,'testator is expressing his intention as of the date of death; the disposition therefore carries with it only the number of shares specified in the will. On the other hand, if the disposition is specific, testator is expressing his intention as of the date of execution of the will; it therefore carries with it all stock splits occurring thereafter. (Note, Rights to Stock Accretions Which Occur Prior to Testator’s Death, 36 Albany L. Rev. 182.) Here again the courts struggle with the traditional indicia to determine whether testator intended a specific or general disposition.
It is reasonable to assume that when a testator gives 100 shares of AT&T instead of a pecuniary disposition, he expects *225 that the disposition will have increased in value at the time of his death. If the disposition increases in value beyond his expectation or the value becomes disproportionate to dispositions to other objects of his bounty, he will alter the disposition by a new will or codicil. His concern is only with total value, not with the number of times his original disposition has been ££ sliced ” by stock splits. In the absence of any action by the testator to reduce the disposition, it may be presumed that he intended that additional shares resulting from a stock split should go to the legatee.
Since testator’s intention that the legatee take the additional shares may be manifested by his failure to take such action, a finding that the disposition is “ general ” because of the absence of the traditional indicia of a specific disposition, may frustrate rather than carry out testator’s intention.
Perhaps this is the reason no appellate court in this State has ever denied the benefit of a stock split to the legatee of a z£ general ” disposition. In Matter of Fitch (281 App. Div. 65, 67, supra) the Surrogate had held that the dispositions in issue were “ general ” for the purpose of avoiding their loss by ££ ademption ”. He also held that the same dispositions found ££ general ” were entitled to the benefit of stock splits. Noting that there seems to be no authoritative case to the contrary, the First Department held that since the Surrogate’s determination was based on his evaluation of the testator’s intent, the dispositions found by him to be ££ general ” nevertheless carried with it the additional shares resulting from a stock split. Surrogate Bennett has flatly decided that a legatee of a ‘ ‘ general ’ ’ disposition is entitled to the benefit of a stock split. (Matter of Roob, 59 Misc 2d 619, supra.) If this is present law, then of course the traditional indicia may be totally disregarded.
However, at least one appellate decision since Fitch continued to pay lip service to the traditional indicia as evidence of intention. (Matter of Howe, 15 A D 2d 396, affd. 12 N Y 2d 870, supra.)
In either case, since the legatee’s right to stock splits turns on testator’s intention, resort to the traditional indicia is often unnecessary.
A report of the Bennett Commission on Estates (N. Y. Legis. Doc. 1966, No. 19, Report No. 5.19.1B, pp. 441, 464) recommended that all dispositions of shares of stock-££ shall be deemed specific * * * unless an intention to the contrary is included in [the] will.” It was not implemented by the commission.
*226 III
Judge Fuld restated the rule governing “ ademption ” in Matter of Wright (7 N Y 2d 365, 367) — “As indicated above, we deal with the problem of ademption. Although, in the early days of our law, ademption was based on the intention of1 the testator, today in New York * * * intention has nothing to do with the matter; the bequest fails and the legatee takes nothing if the article specifically bequeathed has been given away, lost or destroyed during the testator’s lifetime. [Citing cases.]
“What is significant, therefore, is the fact that the precise thing given by the will is not available for disposition at the time of the testator’s death, and it matters not whether this came to pass because of an intentional and voluntary act on the part of the testator, such as an abandonment, sale or gift, or because of an occurrence, involuntary and unintended, such as condemnation, fire or theft.” (Citing cases.)
This is the “physical existence” test. It is a strict rule but also a necessary rule. A disposition found ‘ ‘ general ’ ’ under the earlier rule would have to be replaced with cash often requiring abatement of other dispositions.
The harshness of the rule is ameliorated by “ substitution ” principles. For example, shares of stock sold but repurchased do not adeem; nor does stock “ substituted” by merger with another corporation. A transfer of a specifically bequeathed bank account from one bank to another does not result in ademption; nor does a specifically bequeathed mortgage replaced by another on the same property. (Matter of Charles, 3 A D 2d 119; Matter of Fitch, 281 App. Div. 65, supra; Waldo v. Hayes, 96 App. Div. 454; Matter of Dittrich, 53 Misc 2d 782; Matter of Hoyt, 55 Misc 2d 240.)
By statute (EPTL 3-4.5) the proceeds of insurance will replace specifically bequeathed or devised property under stated circumstances. (Bennett Commission, N. Y. Legis. Doc., 1964, No. 19, Report No. 5.19.2A, pp. 386-404.)
The ‘ ‘ physical existence ’ ’ test is applicable to real property and tangible personal property. Since ‘ ‘ intention has nothing to do with the matter ”, the traditional indicia must be totally disregárded in such cases. However where the disposition is of intangible personal property, mainly bank accounts, the traditional indicia may be applied to determine whether a testator intended a general disposition of money or a specific disposition of the particular fund.
*227 IV
A statute determines how commissions of executors are to be computed (SCPA 2307, subd. 2) —“ The value of any property * * * received, distributed or delivered, shall be considered as money in computing .commissions. But this shall not apply in case of a specific legacy or devise.”
The history of the statute and the reasons for the exception have been fully discussed elsewhere. (Bennett Commission, N. Y., Legis. Doc. 1966, No. 19, Report No. 7.7B, pp. 1190-1215; Matter of Roth, 53 Misc 2d 1066, mod. 29 A D 2d 941; Matter of Newton, 148 Misc. 510; Matter of Keane, 97 Misc. 213.) The theory is that since a specific disposition passes title to the legatee or devisee, the executor is not required to exercise any executorial duties. (Schenck v. Dart, 22 N. Y. 420; Matter of Whipple, 81 App. Div. 589; Matter of Wanninger, 120 App. Div. 273; Matter of Warren, 148 App. Div. 525; Matter of Hull, 172 App. Div. 509; Matter of Scull, 186 App. Div. 377; Matter of Anable, 139 Misc. 914; Matter of Dunigan, 177 Misc. 212; Matter of Povlsen, 62 Misc 2d 239.) Even if the specific disposition is in fact received and then delivered, such duties are considered voluntary and not compensable.
This concept, like the concept of measuring the actual value of the executor’s services by “money” received and paid out is of course arbitrary. It neglects to consider the duty imposed on the executor to take possession of all assets including specifically disposed assets, until debts, administration expenses and estate taxes are paid. The latter obligation, since it requires valuation of the specific disposition can often impose heavier duties than do general dispositions.
Nevertheless the statute is mandatory — no commissions are payable on specific dispositions. The Bennett Commission on Estates after study was disinclined to recommend statutory repeal of the rule (N. Y. Legis. Doc., 1966, No. 19, Report No. 7.15.4B, pp. 136, 149-156; N. Y. Legis. Doc., 1967, No. 19, Supplement to Report No. 7.15.4B, pp. 118-121).
There is, however, a necessary exception to the general rule. Where the will itself directs or impliedly requires the executor to perform executorial duties with respect to the specific dispositions, commissions are payable. (Matter of Fisher, 93 App. Div. 186; Matter of Roth, 29 A D 2d 941, supra; Matter of Grosvenor, 105 Misc. 344; Matter of Brooks, 119 Misc. 738, affd. 212 App. Div. 868; Matter of Berwind, 181 Misc. 559; Matter of Marshall, 199 Misc. 431; Matter of Mattes, 12 Misc 2d 502; *228 Matter of Kuker, 22 Misc 2d 63, supra; Matter of Cannavo, 59 Misc 2d 889.)
The rule then is that commissions are payable on all general dispositions and on specific dispositions when the will itself directs or impliedly requires the executor to perform executorial functions.
When unfairness results — which is quite often the case where the major asset is the subject of a specific disposition — courts will struggle with the traditional indicia to achieve justice by finding the disposition “ general ”. (See e.g., Matter of Roth, 29 A D 2d 941, supra.)
As discussed, the traditional indicia are helpful in those areas where testator’s intention is in issue. It is rare indeed that a testator has any intention with respect to commissions. If he has, he need only express it in his will without employing terms as obscure as the traditional indicia.
The test to be employed is the statutory test. Does the will permit the executor to satisfy the disposition in money or, in his discretion, in kind? If it does then the disposition is “ general ” and commissionable. Does the will direct the executor to turn over only the specified or identified property? If it does then the disposition is “ specific ” and commissionable only if the will itself also directed the executor to perform executorial functions with respect to the property.
The traditional indicia may be employed, if1 at all useful, to answer these questions.
In total summary then it is obvious that -a disposition may be “ general ” for one purpose, particularly where testator’s intention is at issue, yet be specific for other purposes.
Mrs. Volckening owned 80% of the stock of a family corporation. Two nephews active in the business shared the remaining 20 %. She gave each nephew an additional 5 %. With respect to the 70% remaining she said: “ ninth: I give, devise and bequeath to certain Trustees hereinafter named, all my stock in Volckening Inc. * * * in trust nevertheless under the following terms and conditions: ” Mrs. Volckening then expressed her desire that the business be continued and gave her trustees full authority to participate in management. Other than to turn the shares over to the trustees, the will did not impose any executorial functions on the executors.
Without any necessity of resorting to the traditional indicia (although all point to a specific disposition), the will directs the executors to turn over to the trustees only the specified and identified property — all the shares of the family corporation; The *229 equivalent in money would not satisfy the direction since Mrs. Volckening desired “ That my business enterprises be maintained and continued ’ ’. Under the express terms of the commission statute a disposition which cannot be paid in “ money ” but is directed to be distributed as specified property, is a “ specific ’1 disposition. And, since the will itself did not require the executors to perform any executorial functions with respect to the specific disposition, no commissions are payable.
As is usual with respect to specific dispositions, some functions were performed by the executors or to be realistic by the attorneys for the estate. As noted in the prior decision, the residuary was insufficient to pay estate taxes. The two trusts funded with stock of the family corportion were required to pay their pro rata share of such taxes. A corporate redemption of some of the shares became necessary. In order to maintain the desired proportionate ownership of the corporation (70% by the trusts, 30% by the two nephews) assets were deposited by both groups and the corporation from which estate taxes could be paid. None of these functions however were required by the will itself (cf. Matter of Roth, 29 A D 2d 941, supra). And, parenthetically it is observed that the funds deposited and paid out for estate taxes are not commissionable. (Matter of Herrera, N. Y. L. J. June 23, 1970, p. 14, col. 8; Matter of Schmitt, 65 Misc 2d 1021, 1028.) None are sought.
Other issues are disposed of by separate opinon.